UNITED STATES of America,
Appellee,

v.

Aaron L. STEWART,
Defendant-Appellant.

No. 769, Docket 74–2468.

United States Court of Appeals,
Second Circuit.

Argued Feb. 28, 1975.

Decided March 26, 1975.

Don D. Buchwald, Asst. U. S. Atty., New York City (Paul J. Curran, U. S. Atty., S. D. N. Y., and Lawrence S. Feld, Asst. U. S. Atty., on the brief), for appellee.

David A. Pravda, New York City, for defendant-appellant.

Before LUMBARD and OAKES, Circuit Judges, and BARTELS,* District Judge.

LUMBARD, Circuit Judge:

Aaron Stewart appeals from a judgment of conviction entered on November 7, 1974, in the Southern District following a jury trial at which he was found guilty of one count of bank robbery, 18 U.S.C. § 2113(a), one count of assault during the commission of a bank robbery, 18 U.S.C. § 2113(d), and one count of conspiracy, 18 U.S.C. § 371, to violate 18 U.S.C. § 2113. Stewart was sentenced to concurrent terms of ten years in prison on the two substantive counts and five years in prison on the conspiracy count. He was fined $5,000 under the bank robbery count and $10,000 under each of the other two counts. On appeal Stewart alleges that the trial court's instructions to the jury were coercive and erroneous and that the government failed to supply him with certain *Brady* material. We affirm.

Stewart was one of eight persons charged with the November 15, 1973, robbery of a First National City Bank branch on Bruckner Boulevard in the Bronx. Approximately $8,400 was taken in the robbery. At the time of Stewart's first trial six of his co-defendants had pleaded guilty and the seventh had indicated his intention of doing so.[1] All seven testified against Stewart at Stewart's second trial in September.

The testimony of the seven co-conspirators indicated that three of the defendants—Williams, who was the group's leader, Hennegan, and Stewart—and two others had planned to rob the bank in mid-October, 1973, but they abandoned their plans because the bank then appeared to be too well guarded. New plans were made and on November 15, Williams, Hennegan, Stewart, and five other individuals (three males—Stitch, Ruddock, and Evans, and two women—Hall and Becote) again attempted to rob the bank. Difficulties arose on the way to the bank when their getaway van broke down. However, Williams, Ruddock, and Hennegan quickly remedied that problem by stealing a school van at gunpoint from a garage.

The group then proceeded in the van and three cars to within a few blocks of the bank where Hall was left with the cars. The remaining seven drove to the bank in the van. At trial, all those present at the bank agreed that Williams stationed himself outside the bank while the remaining six robbed the bank.[2]

---

* Of the United States District Court for the Eastern District of New York, sitting by designation.

1. The trial of the seventh co-defendant (Ruddock) was severed from Stewart's first trial in July because Ruddock was undergoing a psychiatric examination by state authorities in connection with an unrelated state offense.

2. The bank surveillance photographs showed six robbers in the bank.

After the robbery the seven returned to Hall and the cars, abandoned the van, drove to Queens, and split up the money.

The defense attempted to deny Stewart's participation in the robbery by suggesting that either (1) only seven people took part in the robbery[3] and that the seven participants created the eighth (Stewart) in order to get a better deal from the government, or (2) that the eighth person was someone other than Stewart.

## I

Stewart's first trial in July 1974 ended in a hung jury. He was retried in September 1974. After the jury had deliberated for about six hours, it reported that it had reached an impasse. The district court thereupon gave a modified *Allen* charge, see Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), in which it urged the jury to try harder to reach a unanimous verdict. The court prefaced the *Allen* charge with a cancer analogy,[4] to which Stewart objected. The jury returned to the courtroom approximately one hour later.[5] After some testimony was read back to the jury, the district court told it to disregard the example which he had given previously. The court did not specify to what it was referring except to say that it concerned the "example which [was] not entirely within the scope of the facts in this case at all." Stewart did not object or otherwise indicate that this retraction was ambiguous.

We have had occasion to discuss the cancer analogy in the past, and we indicated then that its use was "unfortunate." United States v. Chaplin,

435 F.2d 320, 323 (2d Cir. 1970). See also United States v. Bowles, 428 F.2d 592, 595–96 (2d Cir.), cert. denied, 400 U.S. 928, 91 S.Ct. 193, 27 L.Ed.2d 188 (1970). While we think that its use was error, we think that the error does not require reversal because of the court's retraction, because the jury deliberated several hours after the retraction, and because at the time of the retraction the judge also told the jury that "in the last analysis what you must do here, regardless of how you arrive at it, is to arrive at a verdict which is in accordance with your conscience, because if it is not in accordance with your conscience, you would be stultifying your oath as a juror. So do the right thing, the thing that you think is right in your conscience." The fact that six hours passed between the *Allen* charge (and cancer analogy) and the guilty verdict supports our view that the jury was not improperly importuned into reaching a guilty verdict. See United States v. Barash, 412 F.2d 26, 31–32 (2d Cir.), cert. denied, 396 U.S. 832, 90 S.Ct. 86, 24 L.Ed.2d 82 (1969) (three-hour lapse between charge and verdict negates suggestion of coercion); United States v. Bowles, 428 F.2d 592, 596 (2d Cir.), cert. denied, 400 U.S. 928, 91 S.Ct. 193, 27 L.Ed.2d 188 (1970); United States v. Hynes, 424 F.2d 754, 757–58 (2d Cir.), cert. denied, 399 U.S. 933, 90 S.Ct. 2270, 26 L.Ed.2d 804 (1970).

## II

Stewart contends secondly that the indictment should be dismissed because the government failed to furnish *Brady* material[6] to him at the time of his first trial. The information in question is a

---

3. The defense suggested that the sixth person shown in the photographs from the bank surveillance cameras was Williams.

4. "I am reminded that your task is very much like a surgeon who is confronted with, say, a mass in the abdomen of a patient, and he has to find out whether or not that it is benign; and simply removing it will put that patient back in good health. So he opens up the person. He doesn't what to find cancer; he couldn't be more happy to find it is benign. But if he finds it is, there is nothing he can do about it. He has to report.

"You are in the same situation. Nobody likes to find anybody guilty. No question about it."

5. Although the exact time is not disclosed by the record, at argument both Stewart's attorney and the assistant United States Attorney recall the elapsed time as approximately one hour.

6. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

statement given to the FBI by Ruddock who was not called as a witness at the first trial. In his statement Ruddock described the bank robbery, but referred to only six participants, omitting any mention of Hall or Stewart.

In analyzing the impact that the disclosure of this statement would have had at the first trial, it must be considered that the statement was incomplete in light of known facts. The statement, and all other testimony in the case, indicated that Williams was outside of the bank during the robbery. Thus, according to Ruddock's statement, there should have been only five robbers in the bank.[7] Yet the photographs from the bank surveillance cameras showed six robbers. Thus, the statement did not rule out Stewart's participation in the bank robbery. Moreover, had the defense been given a copy of the statement and had it called Ruddock as a witness, there is no reason to believe that Ruddock would have testified differently than he did at the second trial when he identified Stewart as one of the robbers.

Ruddock's identity and alleged participation in the robbery were known to Stewart at least six weeks prior to his first trial. Stewart could have interviewed Ruddock prior to that trial or called him as a witness at that trial. The government is not required to make a witness' statement known to a defendant who is on notice of the essential facts which would enable him to call the witness and thus take advantage of any exculpatory testimony that he might furnish. Williams v. United States, 503 F.2d 995, 998 (2d Cir. 1974) (per curiam); United States v. Tramunti, 500 F.2d 1334, 1349–50 (2d Cir. 1974); United States v. Brawer, 496 F.2d 703 (2d Cir. 1974); United States v. Ruggiero, 472 F.2d 599, 604 (2d Cir.), cert. denied, 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398 (1973).

In any event, at the second trial at which Stewart was convicted, he was given a copy of Ruddock's statement, use was made of it in the cross-examination of Ruddock, and it was admitted into evidence as a defense exhibit. The mere possibility that the first trial might have resulted in Stewart's acquittal, had Stewart been aware of Ruddock's statement prior to that trial, is no reason for overturning his conviction and dismissing the indictment. Such a sanction would be wholly disproportionate to any oversight on the part of the government, and contrary to the public interest.

### III

In its charge to the jury the trial court omitted to instruct the jury that a violation of 18 U.S.C. § 2113(d) (commission of assault in course of bank robbery) requires the robbers to have the objective capability of causing physical harm by the means threatened. Although no exception was taken to this portion of the charge, we have previously held that such an omission is plain error. United States v. Marshall, 427 F.2d 434, 437–38 (2d Cir. 1970). However, in Marshall we also indicated that such error would be harmless if the evidence showed that the persons threatened had in fact been in danger. 427 F.2d at 438. Here there was uncontroverted testimony that two of the robbers (Williams and Ruddock) were armed. Thus, the bystanders and bank employees at the scene of the robbery were objectively in jeopardy. See United States v. Cady, 495 F.2d 742, 747 (8th Cir. 1974).

### IV

However, we note that the trial court improperly fined Stewart and sentenced him to concurrent prison terms on both the bank robbery and assault

---

**7.** Ruddock's statement was incomplete in other areas. For example, he made no mention of Hall, one of the six co-defendants who had pleaded guilty prior to Stewart's first trial. Ruddock's confusion may be explained by the fact that at the time he gave this statement, he was also being interviewed about two other bank robberies in which he apparently participated.

counts. We have previously indicated that such sentences for violation of both subsections (a) and (d) of 18 U.S.C. § 2113 are improper. United States v. Pravato, 2 Cir., 505 F.2d 703, 705 (1974); Gorman v. United States, 2 Cir., 456 F.2d 1258 (1972). Therefore the sentence on Count II (violation of section 2113(a)) is vacated.

We have considered the other points raised by Stewart and find them to be without merit.

Affirmed; sentence on Count II vacated.