UNITED STATES of America, Appellee,

v.

Arthur McAVOY, Defendant-Appellant.

No. 507, Docket 77–1383.

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1977.

Decided April 17, 1978.

Jonathan J. Silbermann, New York City (Martin Erdmann, The Legal Aid Society, Federal Defender Services Unit, New York City), for defendant-appellant.

Jeremy G. Epstein, Asst. U.S. Atty., New York City (Robert B. Fiske, Jr., U.S. Atty., for the Southern District of New York, and Audrey Strauss, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before OAKES and VAN GRAAFEILAND, Circuit Judges, and BARTELS, District Judge.*

BARTELS, District Judge:

Arthur McAvoy appeals from a judgment of his conviction after a jury trial in the United States District Court, Southern District of New York, for bank robbery and aggravated bank robbery, 18 U.S.C. §§ 2113(a) & (d), and from the sentences imposed under both sections.

McAvoy was tried with his co-defendant, Peter Quinn, on four counts of a six-count indictment charging him and Quinn in counts 1 and 2 with robbery and armed robbery on January 24, 1975, of the People's Bank for Savings in Larchmont, New York, and in counts 5 and 6 with robbery on March 14, 1975, of the Chase Manhattan Bank in New Rochelle, New York. On June 25, 1975, Quinn pleaded guilty to counts 5 and 6, and on June 27, 1975, McAvoy was found guilty on all counts. The indictment charged a violation of §§ 2113(a) and (d), including both "assault" and placing "in jeopardy" the life of another. Judge Lasker imposed a sentence of five years imprisonment on counts 1 and 2 and suspended the imposition of sentence on counts 5 and 6 and placed McAvoy on probation for a period of five years upon expiration of his term of imprisonment. We affirm.

I

The government's case showed that on January 24, 1975, McAvoy and Quinn persuaded an acquaintance, Gilberto Schmidt, to drive them and McAvoy's girlfriend, Christine Klein, to Larchmont. Once in Larchmont, McAvoy and Quinn directed Schmidt to park outside the People's Bank for Savings, where Quinn and McAvoy put on wigs and then ordered Schmidt and Klein to wait for them with the motor running, as they left the car. They entered the People's Bank for Savings and Quinn

---

* Of the Eastern District of New York, sitting by designation.

then approached a teller, Leslie Nixon, and asked for change of a quarter and some penny wrappers, while McAvoy approached another teller, drew a gun, and demanded money. Quinn handed a flight bag to Nixon, which she filled with approximately $4,814.50.

On March 14, 1975, at 2:50 P.M., McAvoy, Quinn and one Michael Jimison entered a branch of the Chase Manhattan Bank in New Rochelle. Quinn approached a teller, Carol Revet, and demanded change for a dollar. After receiving the change, he again approached Revet and placed a pistol and a bag before her, instructing her to fill the bag with money. Jimison simultaneously approached Ann Ward, another teller, handed her a bag, and gave her similar instructions. While Quinn and Jimison were standing at the tellers' counters, McAvoy stood in the rear of the bank, pacing back and forth. After the tellers had filled the bag with approximately $7,206, the three men left the bank. During the robbery McAvoy left behind a passport application signed in a fictitious name which he had theretofore used to identify himself to a police officer. There was no proof that in either robbery the guns were loaded.

During the course of the trial the government introduced evidence of a third bank robbery not covered by the indictment. For this purpose the government called an FBI agent who testified that prior to the two robberies for which he was being tried, McAvoy had confessed to having committed another armed robbery, at the Marine Midland Bank in Mamaroneck, New York, on December 17, 1974. This testimony was received after McAvoy unsuccessfully challenged the voluntariness of his confession during a mid-trial hearing held out of the presence of the jury. Following Judge Lasker's ruling that the confession was voluntary, McAvoy made no claim in front of the jury that it was involuntary.

## II

Upon this appeal, McAvoy complains that the court's charge with respect to the "in jeopardy" element of § 2113(d) was erroneous because it did not expressly require the jury to find that the guns were "operable," and further that the charge incorrectly defined "assault" under § 2113(d) as requiring only apparent rather than actual ability to inflict threatened injury. He also charges that the court imposed a prohibited simultaneous sentence on him, in violation of 18 U.S.C. §§ 2113(a) & (d).[1]

We have previously reviewed subsection (d) in different contexts in *United States v. Stewart*, 513 F.2d 957 (2d Cir. 1975), and in *United States v. Marshall*, 427 F.2d 434 (2d Cir. 1970). In *Marshall, supra*, the indictment charged only a violation of the "in jeopardy" element of subsection (d) of § 2113, and in *Stewart, supra*, the indictment charged only a violation of the "assault" element of the same subsection. On both occasions we decided that the robbers must have the objective capability of committing an "assault" or of placing "in jeopardy the life of any person by the use of a dangerous weapon or device," otherwise one could not distinguish subsection (d) from subsection (a) of § 2113 which prohibits robbery "by force and violence, or by intimidation."

In discussing the necessity of objective capability we held in these cases that, absent a showing that the guns used in the robbery were unloaded, it was unnecessary

---

1. § 2113.

(a) Whoever, by force and violence, or by intimidation, takes or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association; * * * Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

\* \* \* \* \* \*

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

to establish that the guns used by the robbers were actually loaded if there was a threat to use them. Under these circumstances we stated that the jury might reasonably infer that the guns were loaded since the threat of a robber with a gun was equivalent to a statement by him that the gun was loaded and would be used to carry out his threat. Such inference was also supported by the improbability that a robber would use an unloaded gun to rob a bank since it would place him in jeopardy should he be interrupted by banks guards or police. *United States v. Oliver*, 523 F.2d 253, 260 (2d Cir. 1975); *United States v. Thomas*, 521 F.2d 76, 81 (8th Cir. 1975); *Morrow v. United States*, 408 F.2d 1390 (8th Cir. 1969); *Lewis v. United States*, 365 F.2d 672 (10th Cir. 1966), *cert. denied*, 386 U.S. 945, 87 S.Ct. 978, 17 L.Ed.2d 875 (1967); *Wagner v. United States*, 264 F.2d 524, 530 (9th Cir.), *cert. denied*, 360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548 (1959).

In construing the "assault" element of § 2113(d), an additional question was raised as to its meaning since the term "assault," although not defined in the statute or its legislative history, had acquired many definitions under common law and statutory usage. *United States v. Bell*, 505 F.2d 539, 540 (7th Cir. 1974), *cert. denied*, 420 U.S. 964, 95 S.Ct. 1357, 43 L.Ed.2d 442 (1975); *United States v. Beasley*, 438 F.2d 1279, 1282 (6th Cir.), *cert. denied*, 404 U.S. 866, 92 S.Ct. 124, 30 L.Ed.2d 110 (1971). We held in *Stewart, supra*, that the objective capability requirement of an assault could be satisfied if "the robbers were armed" although we did not expressly reach the issue of whether the assault must be committed "by the use of a dangerous weapon or device". Prior to the recent decision in *United States v. Simpson*, —— U.S. ——, 98 S.Ct. 909, 912 n. 6, 55 L.Ed.2d 70 (1976), the courts were divided as to whether the phrase "by the use of a dangerous weapon or device" in § 2113(d) modified the word "assault" as well as the phrase "puts in jeopardy the life of any person". In *Simpson, supra*, the Supreme Court resolved this difference by adopting the conjunctive construction of § 2113(d) as set forth in Judge McCree's dissenting opinion in *United States v. Beasley, supra*, to the effect that the phrase "by the use of a dangerous weapon or device" must be read, regardless of punctuation, as modifying both the "assault" provision and "puts in jeopardy" provision of § 2113(d).

### III

In the context of this case our concern is not whether weapons were used in the assault but whether those weapons were operable. McAvoy complains of error in two regards with respect to Judge Lasker's charge to the jury as it appears in the margin.[2] First, relative to the "in jeopar-

---

2. Judge Lasker charged:

As I have indicated, these counts require a finding either one, that there was an assault or, two, that the lives of one or more persons were placed in jeopardy by the use of a dangerous weapon. It is not essential to find both an assault and an endangering of lives by the use of such weapons.

Now, the word "assault" is defined to include an unlawful attempt or threat to apply force or violence or to inflict bodily injury when the attempt or threat is coupled with the ·apparent ability to carry it out then and there; so that it arouses a fear in the intended threatened victim that he or she will be subject to immediate physical injury. An assault as it is defined in law may be committed without actually touching or striking or doing bodily harm to the person in question. Indeed, if I were to come up with you and shake my fist in your face in such a manner that you reasonably and objectively believed

that I could and would hit you and strike you, that could be an assault and for example, to speak in terms of the problem we have at hand, the flourishing or pointing or showing of a pistol or gun at another person for the purpose of putting that other person in fear would be sufficient to constitute an assault. I also mentioned to you just now even if you find no assault in connection with counts 2 and 4, these counts may be established if you find beyond a reasonable doubt that the lives of one or more persons were put in jeopardy by Mr. McAvoy by the use of a dangerous weapon. To justify such a finding in this case, you must be convinced beyond a reasonable doubt that the defendant under question carried one or more firearms or that he aided and abetted a co-defendant to do so. It is not essential to such a finding that there be direct evidence that shows the firearm was loaded in fact. If a person is engaged in a

dy" element he claims that the court did not expressly state that the jury must find that the guns were "operable" but instead stated that the jury might infer that the guns were loaded and capable of inflicting deadly injury. The wording of Judge Lasker's charge was: "If a person is engaged in a robbery and does place or points a gun to insure his demand and intends to produce a fear in a person or persons, the jury is permitted to infer that from these facts the gun was loaded and capable of inflicting the deadly injury threatened by the one who employed it." For the reasons we have heretofore mentioned, the pointing of a gun does permit the inference of objective capability and consequently the charge was not erroneous. However, it would have been preferable for the court to expressly instruct the jury that it was required to find by either direct or circumstantial evidence that the weapons used were objectively capable of inflicting deadly injury. The second challenge is to Judge Lasker's instruction defining the assault element under § 2113(d). In defining "assault," the court stated that it included "an unlawful attempt or threat to apply force or violence or to inflict bodily injury when the attempt or threat is coupled with the apparent ability to carry it out then and there." It was error to use, the phrase "apparent ability" to carry out the threat, instead of objective capability. This error was corrected, however, by the court's clarification, in its statement, that "for example, . . . the flourishing or pointing or showing of a pistol or gun at another person for the purpose of putting that other person in fear would be sufficient to constitute an assault." This example conveyed to the jury the necessity of finding objective capability. Under the circumstances we find the error harmless. *Stewart, supra*, at 960; *Marshall, supra*, at 438.

> robbery and does place or points a gun to insure his demand and intends to produce a fear in a person or persons, the jury is permitted to infer that from these facts the gun was loaded and capable of inflicting the deadly injury threatened by the one who employed it.

■ McAvoy further contends that, assuming his conviction under § 2113(d) is allowed to stand, each of the sentences imposed on him must be vacated as improperly duplicative under *Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); *United States v. Mariani*, 539 F.2d 915 (2d Cir. 1976), and *United States v. Stewart, supra*. We have examined these authorities and find them inapposite. It is true that simultaneous sentences, whether concurrent or consecutive, cannot be properly imposed under § 2113(a) and (d). However, McAvoy was given two sentences for two distinct robberies and was not given duplicative or an improper simultaneous sentence. He was given a single, general sentence of five years imprisonment for the § 2113(a) and (d) counts arising from the January 24 robbery, and a single, general sentence of five years probation for the § 2113(a) and (d) counts arising from the March 14 robbery. Such general sentences, which preserve a defendant's right to appeal his conviction on all counts, are well within the provisions of both § 2113(a) and (d). *Gorman v. United States*, 456 F.2d 1258 (2d Cir. 1972); *United States v. Corson*, 449 F.2d 544 (3d Cir. 1971).

McAvoy raises two other objections to the court's charge not raised at the trial: one that the court failed to submit to the jury the issue of voluntariness of McAvoy's statement as to the third bank robbery, and the other that the court failed to caution the jury that Quinn's guilty plea was to be disregarded.[3] We have considered both of these points and find both without merit. *United States v. Fuentes*, 563 F.2d 527, 535–536 (2d Cir. 1977), and *United States v. Diop*, 546 F.2d 484 (2d Cir. 1976), (voluntariness); *United States v. Tolliver*, 541 F.2d 958, 967 (2d Cir. 1976), and *United States v. Rothman*, 463 F.2d 488, 490 (2d Cir. 1972), (co-defendant's guilty plea).

Affirmed.

**3.** After the guilty plea of the co-defendant, Quinn, entered outside the jury's presence, the district court simply told the jurors that Quinn's case "has been disposed of without the necessity of the jury determining it."