UNITED STATES of America,
Plaintiff/Appellee,

v.

Roy Edward BRANNON,
Defendant/Appellant.

UNITED STATES of America,
Plaintiff/Appellee,

v.

Fred George COX, Defendant/Appellant.

UNITED STATES of America,
Plaintiff/Appellee,

v.

Henry WILSON, Jr.,
Defendant/Appellant.

Nos. 79–1057, 79–1069 and 79–1070.

United States Court of Appeals,
Ninth Circuit.

March 10, 1980.

Rehearing Denied April 21, 1980.

Roger S. Ruffin, Harry L. Hellerstein, Marvin Stender, San Francisco, Cal., for Brannon.

Joseph M. Burton, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before WALLACE and SNEED, Circuit Judges, and SOLOMON,* District Judge.

SOLOMON, District Judge:

Roy Edward Brannon, Fred George Cox and Henry Wilson, Jr. appeal their convictions for aggravated bank robbery under 18 U.S.C. § 2113(d).

---

* Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

We affirm.

On May 15, 1978, four armed men robbed a Wells Fargo Bank in San Francisco. Cox was identified as entering the bank first, holding a sawed-off shotgun. He ordered everyone to lie on the floor; he then remained at the door for the duration of the robbery. Wilson, holding a pistol, repeated the order to lie on the floor. He then jumped over the tellers' counter and took $496 in bills from a teller's drawer.

Brannon was identified as the third robber, and a man identified as the fourth robber was found dead two days later.

Immediately after the robbery, the robbers ran to the getaway car. As Wilson entered the car, a dye pack attached to the bills exploded, and Wilson dropped the money. The men drove away.

At the beginning of the robbery, a teller activated the bank's four surveillance cameras. The cameras photographed the robbery.

On the day after the robbery, Scalise and Steil, two investigators from the San Francisco District Attorney's Office received information from the City Housing Authority about an argument among several men. The investigators were told that during the argument two armed men forced another man into a car at gunpoint. Other men, also armed, left in the second car.

The investigators located and staked out the first of the two cars. They saw Cox and also Brannon and his girlfriend Nina Dean, leave a house and walk to the car. The men fit the descriptions of the armed kidnappers. Cox carried a cardboard box. Brannon held a jacket over his arm; an object which appeared to be a weapon protruded from his jacket. Cox and Brannon put the box, the jacket and the concealed object in the trunk of the car and drove off with Dean.

The investigators stopped the car. Cox and Brannon when asked got out of the car, but Dean refused. The investigators pulled her out. She had a loaded pistol and holster in her waistband.

Without obtaining a search warrant, the investigators opened the trunk where they saw a loaded sawed-off shotgun, ammunition and a pair of "patch pants." The shotgun and Dean's pistol were similar to those photographed by the surveillance cameras, and the "patch pants" were similar to those worn by Brannon during the robbery. The investigators impounded the car.

On September 20, 1978, Brannon, Cox and Wilson were indicted for armed bank robbery (18 U.S.C. § 2113(a) & (d)). The indictment charged that the defendants robbed the Wells Fargo Bank and "did assault other persons and put in jeopardy the lives of other persons by the use of dangerous weapons, to wit: handguns and a sawed-off shotgun."

Cox and Brannon filed a motion to suppress the evidence taken in the warrantless trunk search.

Cox also filed a motion to suppress the testimony of a witness who identified him in a photo line-up four months after the robbery. This witness had failed to identify Cox in an in-person line-up two days after the robbery.

The district court denied the motions.

Defendants were jointly tried by a jury.

At the trial, the Government used photographs taken by the bank's surveillance cameras. Brannon and Cox stipulated to the authenticity of the photographs and to their introduction.

Two of the photographs show a man who looks like Wilson and who like Wilson had a large gap in his teeth.

The Government showed these photographs to two bank tellers; each teller identified the man in the photographs as one of the robbers. The Government then asked if the tellers saw that man in court and both identified Wilson.

The Government also showed these photographs to other lay witnesses, all of whom said that Wilson was the man in the photographs.

Cox was not permitted to introduce photographs of a third person (Garrett) who

Cox contended was the robber with the sawed-off shotgun.

The jury was instructed that in order to find defendants guilty of assault in the bank robbery, the defendants must possess the "apparent present ability" to inflict bodily harm or injury upon another.

The jury returned a verdict that all of the defendants "did assault, or put in jeopardy the life of another by the use of a dangerous weapon(s)."

Each of the defendants assert many trial court errors.

(1) Brannon contends that his Fourth Amendment rights were violated when the investigators conducted a warrantless search of the trunk of the automobile.

(2) Wilson challenges the use of bank surveillance photographs taken during the robbery.

(3) Cox contends that he did not receive a fair trial because the district court excluded photographs of a third person (Garrett) which were vital to his defense of mistaken identity.

(4) Brannon and Wilson contend that the district court erred in instructing the jury on the requirements for a conviction of armed bank robbery (18 U.S.C. § 2113(d)).

## I. WARRANTLESS SEARCH

The Government contends that a warrantless search was justified under the "automobile exception." It asserts that Scalise and Steil had probable cause to believe the trunk contained instrumentalities of a crime and that exigent circumstances made it impractical to obtain a warrant.

Scalise and Steil staked out Brannon's car after they received information that armed men had used the car in a kidnapping. They also saw Brannon put a concealed object which looked like a weapon into the trunk.

Brannon, Cox and Dean drove off. The investigators stopped and arrested them. The investigators found a loaded gun in Dean's waistband and a sawed-off shotgun in the trunk, as soon as they opened it.

In *Chambers v. Maroney*, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970), the Court stated:

For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

■ Here, the investigators were entitled to make an immediate warrantless search of the trunk for instrumentalities of a crime. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Chambers v. Maroney, supra.*

## II. SURVEILLANCE PHOTOGRAPHS

There is no merit to Wilson's challenge to the use of the surveillance photographs. They show a man who looks like Wilson. The photographs show the man jump over the teller's counter, take money from a drawer and hold a gun in one hand and money in the other.

Brannon and Cox stipulated to the admission of the photographs. The stipulation dispensed with the testimony of five film witnesses who would have established the chain of events from the time the cameras were activated during the robbery until the films were removed, delivered, developed and printed.

Wilson did not join in the stipulation. He contends that, as against him, the Government was required to call its film witnesses to establish the chain of events, and when the Government failed to call the witnesses, there was insufficient foundation to admit the photographs, two of which were very damaging to Wilson.

■ The evidence that the photographs accurately depicted events in the bank during the robbery was undisputed. This evidence provided a sufficient foundation to admit the photographs. Fed.R.Evid. 901(a); *Mikus v. United States*, 433 F.2d 719, 725 (2nd Cir. 1970); *United States v. Richard-*

*son*, 562 F.2d 476, 479 (7th Cir. 1977), *cert. denied*, 434 U.S. 1072, 98 S.Ct. 1257, 55 L.Ed.2d 766 (1978).

Wilson also contends that the government used the surveillance photographs in an impermissively suggestive way. Specifically, he asserts it violated due process in obtaining in-court identifications by first showing each witness the surveillance photographs.

The Government denies such use. Before being shown the surveillance photographs, each witness testified about the unmasked robber who had jumped over the counter. They were then shown the photographs and each witness testified that the man in the photographs was the robber they had described. They then identified Wilson as the man in the photograph. In fact one witness identified Wilson without looking at the photographs.

■ Unless the Government's use of the photographs led to "a very substantial likelihood of irreparable misidentification," there is no violation of due process. *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

■ The Government could have asked the tellers whether they saw the robber in court before being shown the photographs. Nevertheless, the identifications here were sufficiently reliable. There was no violation of due process. *Manson v. Brathwaite*, 432 U.S. 98, 111–114, 116, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *United States v. Bridgefourth*, 538 F.2d 1251, 1253 (6th Cir. 1976).

Over Wilson's objection, four prosecution witnesses testified that Wilson was the man shown in the surveillance photographs. Two of the witnesses were friends of Wilson and two were tellers who did not know him.

Wilson contends that the district court erred by permitting lay witnesses to give opinion testimony on the identity of the man in the surveillance photographs.

Fed.R.Evid. 701 permits lay opinion testimony when "(a) rationally based on the perception of the witness and (b) helpful to . . . the determination of a fact in issue." In *United States v. Santi*, 604 F.2d 603, 604 (9th Cir. 1979), this Court approved the use of lay witness opinion testimony in identifying a person in bank surveillance photographs.

■ There was no abuse of discretion here.

## III. EXCLUDED PHOTOGRAPHS

Cox contends that he did not receive a fair trial because the district court excluded photographs of a third person (Garrett) which Cox asserts were essential to his defense of mistaken identity.

Brannon joins in this contention. We fail to see how this issue affects any of Brannon's rights. Fed.R.Evid. 103(a).

The Government alleged, and the jury found, that Cox was the robber with the sawed-off shotgun who stood at the entrance to the bank. Cox contended that he was nowhere near the bank when it was robbed. He asserts that Garrett was the robber. Cox called two witnesses in support of his alibi defense, but both were discredited.

Three bank tellers made in-court identifications of Cox. One of the tellers had previously failed to identify Cox at a lineup shortly after the robbery.

Marcella Mundine, a prosecution witness friendly to the defendants, testified that Cox was present at one or two meetings at which the robbery was discussed and that "[h]e wasn't for it." He also testified that Garrett, whose picture Cox wanted to introduce, played a leading role in the planning of the robbery.

When shown the surveillance photographs of the robber with the shotgun, Mundine said: "I don't know who they are. They could be . . . [Garrett]."

Cox did not testify but offered to introduce photographs of Garrett for the jury to compare with the surveillance photographs. The district court judge refused to admit them with the comment: "I don't think Mr. Garrett looks anything like Mr. Cox."

A defendant is entitled to prove his innocence by showing that someone else committed the crime. *United States v. Robinson*, 544 F.2d 110 (2nd Cir. 1977), *cert. denied*, 434 U.S. 1050, 98 S.Ct. 901, 54 L.Ed.2d 803 (1978); *United States v. Holt*, 342 F.2d 163 (5th Cir. 1965).

The district court had broad discretion in determining the admissibility of the photographs. *See United States v. McLennan*, 563 F.2d 943, 948 (9th Cir. 1977), *cert. denied*, 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978). A court may exclude irrelevant evidence. Fed.R.Evid. 402. It may also exclude relevant evidence if such evidence is likely to confuse the issues or mislead the jury. Fed.R.Evid. 403. The district court's decision will not be overturned unless it abused its discretion. *United States v. Kearney*, 560 F.2d 1358, 1369 (9th Cir.), *cert. denied*, 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977).

In our view, it would have been preferable to admit the photographs, but our review of the evidence convinces us that the district court did not abuse its discretion in excluding the photographs. There was no error here.

## IV. *JURY INSTRUCTIONS*

Brannon and Wilson contend that the district court erred in instructing the jury that an "apparent present ability" was sufficient to convict the defendants of assault for aggravated bank robbery. Section 2113 of Title 18 of the United States Code provides in part that:

(a) Whoever, by force and violence, or by intimidation, takes . . . from the person or presence of another any property or money . . . belonging to . . any bank . . .

Shall be . . . imprisoned not more than twenty years . . . .

. . . . .

(d) Whoever, in committing or in attempting to commit . . . any offense defined in subsection[s] (a) . . *assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device*, shall be . . . imprisoned not more than twenty-five years . . .. (Emphasis added)

Aggravated bank robbery under § 2113(d) may be committed in two ways: by assault, or by putting a life in jeopardy. Here the indictment covered both alternatives.

On the jeopardy alternative, the jury was instructed:

In order for you to find a defendant *put in jeopardy the life of a person* by the use of a firearm you must find, beyond a reasonable doubt, that *the firearm in question was loaded* and that, therefore, the life of the person being robbed was placed in an *objective* state of danger. (Emphasis added)

Wilson requested a similar instruction on the assault alternative.

The Government requested the Devitt and Blackmar, Federal Jury Practice and Instructions § 44.07 (3rd ed. 1977) instruction on assault. It reads in part:

[A] person who has the *apparent* present ability to inflict bodily harm or injury upon another person, and willfully attempts to or even threatens to inflict such bodily harm, as by *intentionally flourishing or pointing a pistol or gun at another person*, may be found to have assaulted such person. (Emphasis added)

Wilson asked the district court to change "apparent" to "actual present ability." The court complied but later repeated the instruction without deleting "apparent." The court recognized this inconsistency and again deleted the word "apparent" but included the following language: "any intentional display of force, such as would give the victim reason to fear or expect immediate bodily harm, constitutes assault."

After the jury was instructed, Wilson requested the court to emphasize that assault under § 2113(d) requires "actual present ability" to inflict injury. The court refused.

Wilson argues that "apparent present ability is not enough, that both alternatives of § 2113(d) require proof that the gun was loaded. Wilson contends that the jury

might have convicted him of assault with an unloaded gun, and his conviction must therefore be reversed.

The Government concedes that the jeopardy alternative requires a finding that the guns were loaded, *See Wagner v. United States*, 264 F.2d 524, 530 n. 8 (9th Cir. 1959), but argues that a finding that defendants carried loaded guns was unnecessary on the assault charge.

■ Absent evidence to the contrary, if a gun is used during a bank robbery, the jury may infer that the gun was loaded. *United States v. Jones*, 512 F.2d 347, 351 (9th Cir. 1975). There was sufficient evidence here for the jury to infer that the guns were loaded.

In *United States v. Coulter*, 474 F.2d 1004 (9th Cir.), *cert. denied*, 414 U.S. 833, 94 S.Ct. 172, 38 L.Ed.2d 68 (1973), the defendant was indicted for putting a teller's life in jeopardy. Although defendant was not charged with assault, the district court instructed the jury on assault. Defendant contended that the instruction broadened the indictment. In affirming the judgment of conviction, we stated:

> The distinction between "putting a life in jeopardy" and "assault" is not a difference of great magnitude. Assault as used in § 2113(d) requires "an intent to, and in fact generating a reasonable apprehension in a victim . . . " plus "a threat or attempt to inflict bodily harm coupled with the *present ability to commit violent injury upon the person of another*." *Bradley v. United States*, 447 F.2d 264, 273 (8th Cir. 1971).

.    .    .    .    .

The distinction between "assault" and "put life in jeopardy" as used in § 2113(d) is elusive and overlapping. In fact, the latter may well include the former, a question we do not decide. (Emphasis added)

■ Under the circumstances of this case, we believe that the instructions on assault were adequate. But even if the court should have required the jury to find actual present ability, in our view, its failure to do it was harmless error.

In *United States v. McAvoy*, 574 F.2d 718 (2nd Cir. 1978), the defendant was convicted under § 2113(d). As in this case, the indictment charged both assault and putting life in jeopardy. There was no direct evidence that the gun was loaded. The district court instructed the jury that "apparent ability" to carry out a threat. of force or violence was sufficient to constitute assault.

The Court of Appeals for the Second Circuit held that the pointing of a gun permitted an inference that the defendant had the objective capability to inflict bodily harm, and that the instruction on "apparent ability" although erroneous was harmless error because the district judge immediately added the following example:

> "[T]he flourishing or pointing or showing of a pistol or gun at another person for the purpose of putting that other person in fear would be sufficient to constitute an assault."

Here, the district court, immediately following the "apparent ability" instruction, used the same example and almost the same language used by the district judge in *McAvoy*. We agree with the Second Circuit's conclusion.

We therefore hold that if the instructions on assault were erroneous, the error was harmless.

The convictions are

AFFIRMED.

SNEED, Circuit Judge (concurring):

I concur in Parts I, II, and III of the court's opinion. With respect to Part IV, I concur only in its result.

Part IV raises perplexing issues surrounding the proper interpretation of 18 U.S.C. § 2113(d). Unfortunately the court's opinion appears to do little to resolve any of these issues.

In my view Wilson's argument that a conviction under the assault alternative of section 2113(d) requires proof that the gun was loaded is without merit. The flourishing or pointing of a pistol, whether loaded

**420**

or not, by any able-bodied person constitutes a threat to inflict bodily harm coupled with a present ability to commit violent injury upon the person of another. Pistol whipping, at a minimum, is being threatened. That is a threat to inflict bodily harm by use of a dangerous weapon or device.

This should be stated explicitly. Having done so it would follow that the district court committed no reversible error in giving the instruction of which Wilson complains. We need not at this time decide whether such threats with an unloaded weapon constitute the placing "in jeopardy the life of any person."

I should like to think that I have merely paraphrased what the court has said in Part IV. Of this, however, I cannot be certain.