967 F.2d 592
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Virgena Rae BARRETT, Defendant-Appellant.
 Nos. 91-30108, 91-30109.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 5, 1992.
Decided May 29, 1992.
 
 Before PREGERSON, TROTT and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 * Virgena Rae Barrett was convicted under 18 U.S.C. § 2113(c) (1988) of a bank robbery that occurred on March 12, 1990 (case no. 91-30108), and under 18 U.S.C. §§ 2113(d) and 2 (1988) of aiding and abetting three individuals under 18 in a bank robbery that occurred on April 13, 1990 (case no. 91-30109). On appeal, she alleges numerous errors committed by the trial court. We affirm on all grounds.
 
 II
 
 3
 * Barrett objects to the process used to reveal a latent fingerprint. The standard of review for a district court's determination of whether a scientific technique is generally accepted as a reliable technique has, in all but one case in this circuit, been for an abuse of discretion. Compare United States v. Gillespie, 852 F.2d 475, 480 (9th Cir.1988) ("[t]he trial court has wide discretion") with Daubert v. Merrell Dow Pharmaceuticals, Inc., 951 F.2d 1128, 1130 (9th Cir.1991) (review is "de novo by an appellate court"). We uphold the district court's admission of the fingerprint evidence on both standards.
 
 
 4
 It is well established that fingerprint identification is reliable. The trial court properly found neither laser nor BBD "alters or distorts or destroys the underlying print." Moreover, failures "might prevent one from being made in a given case, but it certainly wouldn't lead to one that a trained observer would, because of the use of this enhancer, misread or misinterpret." No evidence was presented to the contrary. The fact that the expert who testified did not know the scientific properties of the technique used to get the fingerprint is irrelevant. The witness was an expert on fingerprint identification and was able to compare Barrett's fingerprint to the latent print.
 
 B
 
 5
 Barrett filed a pretrial motion to suppress the photomontage identification that occurred 58 days after the March 12th robbery. The district court denied the motion, but granted a motion prohibiting in-court identification. Although the standard of review for identification evidence is not yet settled, we need not settle it for "under either standard of review, the Government prevails." United States v. Dring, 930 F.2d 687, 692 (9th Cir.1991).
 
 
 6
 "For both in-court and out-of-court identification cases, we apply the ... totality of the circumstances test set forth in Neil v. Biggers." Id. at 692 (citing Neil v. Biggers, 409 U.S. 188, 200-01 (1972)). "Biggers implies a two-step test: first, whether the identification procedure was unnecessarily suggestive; and second, whether the identification was nonetheless reliable." Ponce v. Cupp, 735 F.2d 333, 336 (9th Cir.1984). "If under the totality of the circumstances the identification is sufficiently reliable, identification testimony may properly be allowed into evidence even if the identification was made pursuant to an unnecessarily suggestive procedure." United States v. Bagley, 772 F.2d 482, 492 (9th Cir.1985) (citations omitted), cert. denied, 475 U.S. 1023 (1986).
 
 
 7
 We affirm the district court's determination that the totality of the circumstances show the identification was sufficiently reliable. An examination of the original photomontage reveals a fair arrangement of photographs. The photos numbered 2, 3, 5, and 6 all have masculine features. Photo number 3 shows a woman with hair almost as short as Barrett's. All the women are of the same complexion, and all have either brown or blond hair color.
 
 
 8
 The record reveals the procedure used in presenting the photomontage to the witnesses was fair. Dolores Rheaume, the teller who was robbed, stated:
 
 
 9
 Well, he was already in the kitchen when I was told to go in there, and I sat down at the table and he told me he was going to show me some pictures that may or may not be--may or may not include the person who robbed me, and not to worry about it if I didn't recognize anybody, that was fine. If I thought I recognized somebody, you know, to indicate it; and then he just laid them out and I looked at them.
 
 
 10
 ....
 
 
 11
 [Agent Clark was] making every effort to not even look at me or not indicate anything.
 
 
 12
 This procedure was not suggestive. Moreover, all the witnesses claimed to be "very sure" they correctly identified the robber.
 
 
 13
 Given the neutral procedures, the unsuggestive nature of the photomontage itself, and the sureness with which the witnesses claimed to be certain of their identifications, we uphold the district court's finding that the out-of-court identifications were reliable.
 
 C
 
 14
 A pretrial order in the instant case precluded in-court identification by the bank witnesses because after identifying the person they thought was the bank robber from the photomontage, the witnesses were told they had identified Barrett. Therefore, during the testimony of the bank witnesses, no identification of Barrett was made. However, FBI Agent Clark testified the witnesses had made an out-of-court identification of Barrett from the photomontage. Barrett objected to admission of Agent Clark's statement, but the objection was denied. Questions of admissibility of evidence are reviewed for an abuse of discretion. United States v. Owens, 789 F.2d 750, 753 (9th Cir.1986), rev'd on other grounds, 484 U.S. 554 (1988). Because the witness was available for cross-examination, we find this evidence was properly admitted under Fed.R.Evid. 801(d)(1)(C). There was no order precluding out-of-court identification evidence. Moreover, this issue is controlled by United States v. Elemy, 656 F.2d 507, 508 (9th Cir.1981), where we allowed an FBI agent to testify about a bank employee's identification of a bank robber under Fed.R.Evid. 801(d)(1)(C).
 
 D
 
 15
 Barrett claims the testimony of Leslie Parks should have been admitted. Parks had seen the bank surveillance photograph and thought the robber was a male named Ray Johnson. Admission of Parks' testimony was denied by the court under Fed.R.Evid. 403. The district court determined the relevance was outweighed by the prejudice. Parks merely went out with one of Johnson's friends "a long time ago," and "thought it might be Ray Johnson." There was no other corroborative evidence to link Johnson with the robbery. Although "[a] defendant is entitled to prove his innocence by showing that someone else committed the crime," United States v. Brannon, 616 F.2d 413, 418 (9th Cir.), cert. denied, 447 U.S. 908 (1980), the district court has broad discretion in determining what evidence is irrelevant or is likely to confuse the jury, id.; see also United States v. Sanchez, 829 F.2d 757, 758 (9th Cir.1987). There was no abuse of discretion in not admitting the testimony of Leslie Parks.
 
 E
 
 16
 Barrett claims the government called Mercer and Mendoza for the sole purpose of admitting their prior statements to the police. An examination of the record clearly shows Mercer and Mendoza were called for more than just impeachment. They were participants in the second bank robbery and testified to many things in addition to recanting their police statements.
 
 
 17
 Barrett also claims the evidence should not have been admitted as substantive evidence, but merely for impeachment.[1] The trial court admitted the statements under the coconspirator exception to the hearsay rule. See Fed.Rule Evid. 801(d)(2)(E). The standard of review is not settled in this circuit with respect to admission under the conspiracy exception. See United States v. Tamez, 941 F.2d 770, 775 (9th Cir.1991) ("The standard we use to review a district court's decision to admit 801(d)(2)(E) statements ... is not settled"). In the instant case, the issue would be resolved the same way under either the de novo or clear error standard--the district court applied the rule in a clearly erroneous manner.
 
 
 18
 The statements were made to the police well after the course of the conspiracy. "To determine whether this requirement is met, we must look ... at whether the main objectives of the conspiracy have been accomplished." United States v. Vowiell, 869 F.2d 1264, 1270 (9th Cir.1989) (citation omitted). "[A] conspiracy ends once the fugitives have passed the point of immediate pursuit." Id. The conspiracy had clearly ended three days after the robbery, when Mercer and Mendoza were in police custody.
 
 
 19
 The government argues the statements should be admissible under the catch-all exception in Fed.R.Evid. 803(24). Barrett points out that the Ninth Circuit has explicitly found where the government fails to state the exception in the district court or the court fails to find the statements meet the requirements of Rule 803(24), the appellate court cannot use 803(24) as a basis for its admissibility. See Tafollo-Cardenas, 897 F.2d at 980.
 
 
 20
 However, in the district court, the government used 804(b)(5) as an alternative provision to admit the statements. The catch-all exception in Rule 804(b)(5) is identical to 803(24), although the declarant must be unavailable under Rule 804(b)(5). See Mutuelles Unies v. Kroll & Linstrom, 957 F.2d 707, 713 (9th Cir.1992) (the requirements that a district court make a specific finding under Rule 804(b)(5) is the same as Rule 803(24) because "the rationales underlying [the two rules] are the same").
 
 
 21
 The government's raising of 804(b)(5) in its memorandum to the district court as an alternative method to admit the statement, and the district court's granting of the motion, was sufficient to overcome the requirement in Tafollo-Cardenas that 803(24) had to have been raised and considered by the district court in order for us to consider it.
 
 
 22
 In order to admit a statement under Rule 803(24), the court must find "trustworthiness equivalent to that of the other specific hearsay exceptions." Larez v. City of Los Angeles, 946 F.2d 630, 642 (9th Cir.1991). The district court made a finding regarding the truthworthiness of the statements:
 
 
 23
 And it seems to the Court that what they're saying ... is that what's important is the factors of reliability.... [P]eople don't usually go around saying anything that could subject them to imprisonment without giving someone a basis for believing or telling the truth.
 
 
 24
 There is no question that Ms. Mercer's statement of April 19 was against her penal interest. It was a clear confession to a bank robbery, and it was made within days of the second robbery.... It's corroborated by physical evidence found at the family home and with an ample sprinkling of facts that only she could know concerning the family home and the relationship with her mother.
 
 
 25
 And while she was in custody at the time, this wasn't an effort at blame shifting. She was, as a matter of fact, prosecuted....
 
 
 26
 And, it seems to the Court that certainly justified a reliable and as many renditions of reliability of the Appellate Courts have required for admission statements of co-conspirators or any other of the exceptions under 801 through 804.
 
 
 27
 The district court properly found the statements were reliable and did not abuse its discretion in admitting the statements.
 
 F
 
 28
 Barrett complains that the original tape-recording of Mercer's statement was lost. However, Fed.R.Evid. 1004 states that "[t]he original is not required, and other evidence of the contents of a writing, recording or photograph is admissible if--(1) ... [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith." With no evidence of bad faith, the transcript of the tape is clearly admissible. Rayner v. NLRB, 665 F.2d 970, 975 n. 6 (9th Cir.1982).
 
 G
 
 29
 Barrett claims the red gym bag found during the search of her home was not properly authenticated, and therefore unfairly left the jury with the impression that the gym bag found at her home was the same gym bag used at the robbery. "The standard of review of a district court's decision regarding authenticity of evidence is the abuse of discretion standard." United States v. Chu Kong Yin, 935 F.2d 990, 994 (9th Cir.1991) (quotation omitted).
 
 
 30
 Fed.R.Evid. 901(b)(4) allows "[a]ppearance, contents, substance, internal patterns or other distinctive characteristics, taken in conjunction with circumstances" to authenticate evidence. "The authentication of evidence is 'satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.' " United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir.) (quoting Fed.R.Evid. 901(a)), cert. denied, 112 S.Ct. 164 (1991). Moreover, "[i]f the evidence is an object connected with the commission of a crime, the proponent must also establish the chain of custody." Id. (quotation omitted). However, "[t]he government may prove that connection by circumstantial, as well as direct, evidence." United States v. Black, 767 F.2d 1334, 1342 (9th Cir.) (quotation omitted), cert. denied, 474 U.S. 1022 (1985). Merely raising the possibility of a break in the chain of custody is insufficient, and "goes only to the weight of the evidence." Harrington, 923 F.2d at 1374.
 
 
 31
 In the instant case, Mercer stated that her mother provided the disguises inside a red gym bag. At trial she testified a gym bag was used. She also claimed the bag was taken to the hotel were she was staying with other juveniles. Mercer stated the source of the bag was Barrett. In Mercer's original statement, she claimed the bag was returned to her mother's house. The bag was then found at her mother's house. Given these surrounding circumstances, the trial court did not abuse its discretion in allowing the red gym bag into evidence.
 
 H
 
 32
 Barrett claims there was a direct conflict between two of the court's instructions. This was objected to at trial, so review is de novo. United States v. Terry, 911 F.2d 272, 278-79 (9th Cir.1990).
 
 
 33
 The trial court's instruction 18 reads in pertinent part
 
 
 34
 A "dangerous weapon or device" includes anything capable of being readily operated, manipulated, wielded or otherwise used by one or more persons to inflict severe bodily harm or injury on another person.
 
 
 35
 ....
 
 
 36
 To "put in jeopardy the life" of a person "by the use of a dangerous weapon or device" means, then that the life of the person being robbed is placed in an objective state of danger by the use of such dangerous weapon or device.
 
 
 37
 Barrett claims the instruction is self-contradictory, for the first part of the instruction includes unloaded weapons, but the second part of the instruction requires "an objective state of danger," which only includes loaded weapons. The alleged contradiction is that a "dangerous weapon" could be unloaded, but in order to "put in jeopardy the life of," the weapon must be loaded.
 
 
 38
 Although Barrett claims there was no proof the gun was loaded--none was presented at trial--and therefore would fail the objective requirement of what constitutes being put in "jeopardy of life," the Ninth Circuit has held, "[a]bsent evidence to the contrary, if a gun is used during a bank robbery, the jury may infer that the gun was loaded." Brannon, 616 F.2d at 419. It is clear that Sylvia Freese--the clerk at the second robbery--saw the three robbers with their guns and was put in fear. There was error on the part of the trial court.
 
 
 39
 In any case, any error is harmless, for all that is required to find Barrett guilty under 18 U.S.C. § 2113(d), is objective fear, and an unloaded gun "instills fear in victims and bystanders, creating the risk of violent response." United States v. Boyd, 924 F.2d 945, 948 (9th Cir.), cert. denied, 112 S.Ct. 98 (1991). Even if Freese did not remember whether the gun was directly pointed at her, an unloaded gun would be sufficient to jeopardize the life of Freese.
 
 
 40
 Finally, Barrett complains that the definition of "assault" left out an "intent to and in fact generate a reasonable apprehension in a victim." This claim has no merit, for the instruction given was almost identical to an instruction approved in Brannon. 616 F.2d at 419.
 
 
 41
 * Barrett argues consolidation was in error. Federal Rule of Criminal Procedure 13 allows cases to be tried together "if the offenses ... could have been joined in a single indictment." We hold there was no abuse of discretion in consolidating the trials. Barrett has to show the "trial court's denial of severance ... was so manifestly prejudicial that it overcomes the dominant concern with judicial economy." United States v. Johnson, 820 F.2d 1065, 1070 (9th Cir.1987) (quotation omitted). She has not shown this.
 
 
 42
 In the instant case, these robberies were of the same or similar character. The two bank robberies of the same branch, one month apart, and were allegedly masterminded by Barrett. Moreover, the gun used in the second robbery was found at Barrett's house. The two robberies could have been charged in the same indictment because the offenses "are of the same or similar character." Fed.R.Crim.P. 8(a).
 
 
 43
 It should be noted that the evidence of both robberies would have been admissible in separate trials under Fed.R.Evid. 404(b). Under 404(b), "[e]vidence of other crimes, wrongs or acts ... may ... be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake of accident." In the instant case, the government was trying to show that part of Barrett's motive for both robberies was her belief that bank tellers were stupid and a robbery could easily be done. Therefore, Barrett cannot complain that by consolidating the trials evidence was presented that otherwise would have been excluded.
 
 
 44
 Finally, in consolidating cases, we must be concerned with possible jury confusion. Johnson, 820 F.2d at 1071. As in Johnson, "the jury was not likely ... to confuse which count particular evidence was introduced to establish." Id. In the instant case, the jury would probably not confuse robbing a bank with a bomb and putting three juveniles up to robbing the same bank a month later. Barrett has not shown the district court abused its discretion.
 
 J
 
 45
 Barrett claims the affidavit for the search warrant on April 19, 1990, failed to produce probable cause. We review the magistrate's finding of probable cause for clear error. United States v. McQuisten, 795 F.2d 858, 861 (9th Cir.1986).
 
 
 46
 Barrett points to some allegedly false or misleading statements in the affidavit. One of her main arguments is that "Mercer indicates she gave the money to defendant, but does not state that it was given to defendant at her residence." Barrett seems to base her argument on the order of the questioning--Mercer says she gave the money to her mother after she says she was taken to the motel. In fact, the questions could easily lead one to conclude the money was at Barrett's residence because Mercer went to her mother's (Barrett's) house after the robbery:
 
 
 47
 Q: And then you walked to your mom's house?
 
 
 48
 A: Yeah.
 
 
 49
 Q: Then what did you do?
 
 
 50
 A: And then my mom took me to the motel.
 
 
 51
 Q: Okay, what did you do with the money?
 
 
 52
 A: Give it to my mom.
 
 
 53
 There is no indication the money was given to Barrett at the hotel. The question "[W]hat did you do with the money?" is not related to the previous answer. The trial court correctly found there might be
 
 
 54
 a reasonable inference when you take it in the context of the rest of her statement, that her mom is robbing banks to pay her electrical bills, that she would summon Regina [Mercer] to the house ... She said, "I gave the money to Mom." Couldn't a natural inference be that she probably did that, or gave it to her at her mother's house?
 
 
 55
 Later the court noted "if you read her statement, you'll see several references to her mom's house." There was no patently false statement in the affidavit, and no evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), was required. See McQuisten, 795 F.2d at 862-63.
 
 
 56
 Barrett also complains that the affidavit for the search warrant did not state Mercer was charged with bank robbery. However, it does state Mercer "participated ... in the robbery of said bank of April 13, 1990," which carries the same implication. Again, there was no abuse of discretion.
 
 K
 
 57
 Barrett argues that because the first robbery was a violation of 18 U.S.C. § 2113(a)--involving the use of force or violence to rob a bank--and not 18 U.S.C. § 2113(d) (assault by use of a dangerous weapon in committing bank robbery), the increase of three levels for displaying a dangerous weapon should not apply.
 
 
 58
 This argument has no merit. There is nothing in § 2113(a) precluding the district court from increasing the base offense level under U.S.S.G. § 2B3.1(b)(2)(C). Moreover, we have allowed an increase of an offense level with § 2B3.1(b)(2)(C) for someone who was convicted of § 2113(a). See Boyd, 924 F.2d at 946-47.
 
 III
 
 59
 For the reasons given above, the district court's decision is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Under the Federal Rules of Evidence, these statements could not be admitted under 801(d)(1)(A) (prior inconsistent statement), for the prior statement had to have been given under oath. See United States v. Tafollo-Cardenas, 897 F.2d 976, 980 (9th Cir.1990) (the defendant's "statements were inadmissible under Rule 801(d)(1)(A), because she did not give them under oath at trial, hearing or other proceeding or in a deposition")