**UNITED STATES of America,
Appellee,**

**v.**

**James Francis EUSTACE, Appellant.**

**No. 396, Docket 34076.**

United States Court of Appeals, Second Circuit.

Argued Jan. 6, 1970.

Decided March 31, 1970.

---

Lars I. Kulleseid, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., Leonard M. Marks, Asst. U. S. Atty.,

Southern District of New York, on the brief), for appellee.

Robert Mitchell, New York City, for appellant.

Before LUMBARD, Chief Judge, FRIENDLY, Circuit Judge, and JUDD, District Judge.*

JUDD, District Judge:

James Francis Eustace appeals from a judgment of conviction entered on August 5, 1969, after a jury trial (Walter R. Mansfield, J.). He was convicted on both counts of a two-count indictment charging him with bank robbery and with assault and the use of a revolver in the commission of the robbery, in violation of 18 U.S.C. § 2113(a) and (d).

There was evidence at the trial tending to prove that on Wednesday, October 23, 1968, at a few minutes after ten in the morning, a man, dressed as a priest, entered the Sterling Forest Branch of the County National Bank in Tuxedo, New York. The man had approached from a late model bronze colored car parked about fifteen feet from the bank. The bank manager, Mr. Howard, saw the car through the glass door of the bank. The man talked briefly with Mr. Howard, then drew a revolver and ordered Mr. Howard and Mrs. Hall, a teller, to lie down on the floor. The two employees were handcuffed, their legs tied and their mouths taped. The man and a companion escaped with $38,542.58. The robbery lasted about ten or fifteen minutes.

A bronze colored 1967 Ford Galaxie with stolen license plates was found abandoned on a back road about a mile and a half from the bank on the evening following the crime. Mr. Howard testified that the car appeared to be similar to the one he saw parked near the bank. Defendant was arrested in Manhattan two days after the crime and had on his person $1,241 in cash.

Mr. Howard and Mrs. Hall made in-court identifications of the defendant as the man who had entered the bank

---

* Of the Eastern District of New York, sitting by designation.

dressed as a priest. They also testified to picking the defendant out of a seven-man lineup in April, 1969. The government also introduced evidence tending to show defendant's access to the bronze Ford and his familiarity with the area of the crime.

Defendant first contends that the trial court committed reversible error in admitting testimony regarding the 1967 Ford Galaxie and defendant's presence at Greenwood Lake, New York, during the summer before the crime.

Over defense counsel's objection, the government was permitted to trace the checkered history of the car. The car was rented in Ohio to Ronald Fabian, who drove it to New York and forged a new registration in the name of his girl friend, Gloria Grimshaw (nee Brighenti). After Fabian was arrested in Ohio in February, 1968 on an unrelated charge, the car was released to Gloria as the record owner. The car was used by Gloria and her brother, Ben Brighenti, both longtime friends of defendant. During the summer of 1968, it was driven by Ben on trips to Greenwood Lake, a town located 10 to 12 miles past the bank (driving from New York City). Defendant and Ben Brighenti were seen together on weekends at Greenwood Lake that summer.

■ Although it was not proved that defendant was ever in actual possession of the car, the trial court acted within its discretion in permitting evidence of defendant's access to a car which was shown to be the likely getaway vehicle. See 1 Wigmore, Evidence (3d ed. 1940) §§ 83, 88; Morton v. United States, 87 U.S.App.D.C. 135, 183 F.2d 844 (1950) (possession two weeks before murder of a gun not specifically shown to be the murder weapon). There is no validity to defendant's argument that an inference cannot be based on another inference. Toliver v. United States, 224 F.2d 742, 745 (9th Cir. 1955); see De Vore v. United States, 368 F.2d 396, 399 (9th Cir. 1966). Here the entire record, including eye-witness testimony and circumstantial evidence, amply supports the finding of guilt.

The evidence as to the car's history did reveal several other criminal acts; however, these acts did not involve defendant, and defense counsel made no attempt to limit the government's testimony by stipulating the facts of Gloria's possession and the relationship between herself, her brother and defendant.

■ Similarly, the trial court acted properly in admitting evidence that during the summer preceding the robbery, defendant spent weekends at Greenwood Lake and that in driving there he would have passed the bank. This evidence was admissible as tending to show defendant's familiarity with the scene of the crime. See Gorman v. United States, 380 F.2d 158, 166 (1st Cir. 1967).

■ Defendant's second contention, that the trial court erred in permitting the government to recall F.B.I. Agent Whelan as a rebuttal witness, is without merit. Agent Whelan testified on the government's direct case to arresting defendant and finding $1,241 on his person. Two defense witnesses subsequently testified that a few days before defendant's arrest, they gave him $530, obtained from the sale of tickets to a vaguely described benefit. To rebut the defense's suggested explanation of the cash found on defendant at the time of the arrest, Agent Whelan was recalled and testified that when questioned about the money, defendant said (after *Miranda* warnings) that it was money from the repayment of loans and said nothing about the sale of benefit tickets. Such recall and rebuttal was unquestionably proper. United States v. Klass, 166 F.2d 373 (3d Cir. 1948). It was hardly incumbent upon the government to anticipate the defense testimony and offer defendant's post-arrest exculpatory statement on its direct case.

■ Defendant next attacks the conduct of the trial judge in questioning defendant's alibi witnesses, who testified to seeing the defendant in Manhattan at or shortly after the time of the robbery.

The record reveals that the trial judge's questions were brief and clearly within the court's discretion. United States v. Rosenberg, 195 F.2d 583, 593–594 (2d Cir. 1952), cert. denied, 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 687 (1952). The questioning here was very different from that involved in United States v. de Sisto, 289 F.2d 833 (2d Cir. 1961) and the other cases cited by defendant. Moreover, the trial judge charged the jury that his questions were not intended to convey any view as to the merits of the case or the credibility of the witnesses, and he declined to comment on the evidence.

■■■ Defendant's fourth contention is that the post-indictment lineup violated due process. Counsel was present, and the other men in the lineup resembled defendant in stature and general appearance. Defendant does not question the conduct of the lineup itself, but rather argues that the lineup was unnecessary and served only to insure identifications at trial and to permit the government to manufacture prejudicial items of evidence, i. e., the lineup photographs. This argument is frivolous and misconceived. The cases from which defendant derives his requirement of "necessity," Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) and Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), involved the need to justify the use of other identification procedures less fair than a lineup, and conducted without the presence of counsel. The fact that an indictment had already issued did not make the lineup improper. The lineup serves to protect a defendant who is mistakenly indicted as well as to bolster the prosecution's case. As for the lineup photographs, they indicated how fair the lineup was and thus strengthened the identification testimony. There was no impropriety in permitting their use. United States v. Baker, 419 F.2d 83 (2d Cir. Oct. 15, 1969).

Defendant's contentions as to the series of questions asked by the jury, and some of the court's answers, are also without merit. The jury deliberated about an hour before submitting its questions, and, after receiving answers and supplemental instructions from the court, deliberated over four hours more before reaching a verdict. The questions suggest a jury performing its task conscientiously. The defendant was not prejudiced by the fact that the jury asked some questions regarding matters not in the record and regarding factual issues. The trial judge's answers properly indicated where there had been no evidence presented, and remitted the jury to its own recollection to resolve factual issues. The defendant's particular attack upon the court's answer to a question as to whether defendant had a criminal record is completely unfounded, since the court's answer that there was no evidence on the subject, was discussed with counsel beforehand, and no different answer was requested.

■■■ Defendant's final contention concerns the government's obligation to disclose exculpatory material under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). At the beginning of the trial, defense counsel requested copies of the grand jury testimony and statements to the government of three witnesses who supported defendant's alibi. The government had previously notified the defense that these witnesses purported to have knowledge of defendant's whereabouts on the morning of the robbery. The court ordered the government to mark and show the defense those portions of the testimony and statement which could reasonably be construed as helpful to the defense. Revealing the balance before the witnesses testified would have deprived the government of the possibility of showing inconsistencies in the witnesses' statements. The government later used portions of the grand jury testimony and statements of these witnesses on cross-examination, and the testimony and statements which were so used were marked for identification. These documents, including the portions that had previously been withheld from defendant's view, were apparently made available to defense coun-

sel at the end of each witness' cross-examination. These papers were not Jencks Act material, but by analogy to the Jencks Act, their production would not be necessary until after the witnesses testified for the government. 18 U.S.C. § 3500(a).

Defendant's claim here is that the trial court erred by not itself inspecting the testimony and statements. This Circuit recently considered and rejected a similar claim in United States v. Crisona, 416 F.2d 107, 116 (2d Cir. 1969). See also United States v. Evanchik, 413 F.2d 950 (2d Cir. 1969). Moreover, the claim here is particularly weak since the testimony and statements sought were those of accessible and friendly witnesses whom defendant had already interviewed. Nevertheless, this court has examined the statements, and found nothing helpful to defendant in the portions that were blocked out.

Judgment affirmed.