UNITED STATES of America,
Appellee,

v.

Malcolm BOWLES, David Thomas and
Walter Wilson, Appellants.

Nos. 717, 718, 898, Dockets 34335–34336,
34497.

United States Court of Appeals,
Second Circuit.

Argued April 22, 1970.

Decided June 16, 1970.

Whitney North Seymour, Jr., U. S. Atty. for the Southern District of New York, Peter F. Rient and Jack Kaplan, Asst. U. S. Attys., for appellee.

Milton Adler, The Legal Aid Society, New York City, Phylis Skloot Bamberger, New York City, of Counsel, for appellant Bowles.

Abraham Solomon, New York City, for appellant Thomas.

William J. Quinlan, Schenectady, N. Y., for appellant Wilson.

Before MOORE and SMITH, Circuit Judges, and WEINFELD, District Judge.*

EDWARD WEINFELD, District Judge.

Malcolm Bowles, David Thomas and Walter Wilson appeal from judgments of conviction after a jury trial for knowing possession of stolen mail. They were indicted together with a fourth defendant, Felix Ganuza, who pleaded guilty before the trial. The appealing defendants attack their convictions upon different grounds. Finding no error we affirm the convictions.

The jury having returned the guilty verdict, the evidence must be viewed most favorably to the government.[1] On the morning of July 16, 1968, William Genovese, a letter carrier assigned to the Morrisania post office station in the Bronx, in accordance with his usual practice, prepared pieces of mail in "relay bags" and sent one such bag ahead to be placed in a "relay box" located at 169th Street and Morris Avenue, where he would later pick up the bag and make his deliveries. At about 10:15 a. m., as he approached the relay box, a woman attracted his attention by shouting something and he saw two men running up the block on 169th Street, making a turn on College Avenue. One of the men wore a "bright red or orange shirt." Genovese ran after them, but by the time he reached the corner they were out of sight. He did notice there a convertible car with New Jersey license plates. Genovese then returned to the relay box, which he found had been broken into, the lock broken; the relay bag which he had earlier prepared was missing.

At 10:15 a. m. or thereabouts, Officer Harmon of the New York City Police Department, while on radio patrol, observed a white convertible with New Jersey registration plates in the vicinity of 170th Street between Park and Washington Avenues. Seated in the car were four men, Wilson, Thomas and Bowles, the appellants here, and Ganuza, their co-defendant. Wilson was behind the wheel; Thomas was next to him in the front seat; Bowles, wearing a bright orange shirt, was in the back, and alongside of him was Ganuza. Officer Harmon asked Wilson, the driver of the car, to open the trunk.[2] As Harmon and Wilson were walking to the rear of the convertible, the top of which was down, Harmon noticed a bundle covered by a shirt between Ganuza's legs. The officer asked what was in the bundle, and getting no response, lifted the shirt and saw a mail bag with a stamp, "U.S. Mail," on its side. Next to the mail bag the police officer also found two crowbars, a

* Of the Southern District of New York, sitting by designation.

1. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Tropiano, 418 F.2d 1069, 1074–1075 (2d Cir. 1969), cert. denied, 397 U.S. 1021, 90 S.Ct. 1262, 25 L.Ed.2d 530 (1970); United States v. Kahaner, 317 F.2d 459, 467 (2d Cir.), cert. denied, 375 U.S. 836, 84 S.Ct. 74, 11 L.Ed.2d 65 (1963); United States v. Brown, 236 F. 2d 403, 405 (2d Cir. 1956).

2. Harmon had been cruising the neighborhood as a result of a communication from headquarters which had led him, 45 minutes earlier, to inspect a second relay box nearby at Boston Road and Jefferson Place, where the lock had been tampered with.

ball peen hammer and a screwdriver. The bag, when seized by the police officer, contained 208 pieces of mail.

Later that day, Genovese, the letter carrier, identified the bag as the one he had sent on to be placed in the relay box at 169th Street and Morris Avenue.

None of the defendants testified upon the trial.

### I.

■ Appellant Bowles does not challenge the sufficiency of the evidence against him. He presents other grounds for reversal. First, he contends that it was prejudicial error for Judge Cannella, who heard and denied a pretrial motion to suppress evidence, to deny Bowles' request that he disqualify himself from presiding at the trial. The contention appears to be that at the suppression hearing evidence was properly received on the issue of probable cause that four men, driving a white convertible, were involved in a series of mail thefts, and hence this presented "the possibility that the Judge's knowledge of this information would prejudice the [defendant's] right to a fair trial."

The point hardly merits discussion. Trial judges are disciplined to exclude hearsay or prejudicial evidence in reach-

ing a final determination.[3] If in fact there was any claim of bias or prejudice, whatever the alleged ground, the proper procedure was to comply with the recusing statute, 28 U.S.C. section 144, which appellant failed to do. In any event, the jury, and not Judge Cannella, was the trier of the fact.[4] Moreover, the speciousness of appellant's claim is demonstrated by Judge Cannella's action before the jury panel was assembled, when noting that Bowles wore a "sweater of orange hue," he suggested a change of attire "because it isn't fair to him to be sitting there with the same shirt he was supposed to have worn at the time the thing happened."[5] The court thereupon directed that Bowles be afforded an opportunity to change his shirt, which he did.

■ In a related argument it is urged that Bowles desired a nonjury trial, but that his decision would be influenced by Judge Cannella's ruling on the motion for disqualification. Judge Cannella refused to consider a nonjury trial for Bowles, since his codefendant Wilson adhered to his constitutional right to trial by a jury of his peers, and also denied Bowles' motion for severance. However, there is no constitutional right to a nonjury trial.[6] Under the Rule,[7] the consent of the United States Attorney and

---

3. See Stevens v. Vowell, 343 F.2d 374, 380 (10th Cir. 1965); McComb v. McCormack, 159 F.2d 219, 227 (5th Cir. 1947); United States ex rel. Berkery v. Myers, 242 F.Supp. 515, 517 (E.D.Pa.1965). See generally In re J. P. Linahan, Inc., 138 F.2d 650 (2d Cir. 1943).

4. Gregg v. United States, 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969), relied upon by appellant, is inapposite. *Gregg* was concerned with an alleged violation of Rule 32 of the Federal Rules of Criminal Procedure, which expressly provides that a presentence report "shall not be submitted to the court * * * unless the defendant has pleaded guilty or has been found guilty." The Supreme Court found no unfairness in the trial judge's consideration prior to trial of a psychiatric report on the defendant which contained the identical information.

5. " * * * I notice that the defendant Malcolm Bowles still has on a sweater of

orange hue which he had on at the time that I had a motion to suppress * * * and I remember the testimony in the case indicating that at some portion of the testimony somebody saw a man with an orange shirt or sweater on.

" * * * I would think that the defense could spend a dollar and a quarter to get him a shirt that isn't the same one that apparently is supposed to be the one that he wore at the time * * *.

"If his wife or somebody is here, let him go and get a shirt, or if they brought one bring him some place and let him change it, because it isn't fair to him to be sitting there with the same shirt he was supposed to have worn at the time the thing happened."

6. Singer v. United States, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965).

7. Fed.R.Crim.P. 23(a).

the court is required, and such consent was not granted. Thus, any effect on appellant's decision to waive trial by jury is wholly academic.

Bowles' next contention centers about the court's supplemental charge, when the jury, after several hours deliberation, was unable to agree upon a verdict. Thereupon the court instructed them to deliberate further, stating:

> It seems to me that in a case of this kind where the evidence has been so short and the arguments have been made to you immediately thereafter that you should come to some conclusion.
>
> You are in the same position as a doctor. A doctor sometimes goes in and does something he doesn't like to see. He opens up a person and he finds cancer. It is a terrible thing.
>
> But you are here as a jury to perform your duty under your oath, and whether the Government likes the decision or whether the defendants like the decision is of no concern of yours whatsoever. Predicated upon what you have heard, you will make an individual judgment as to their guilt or innocence, and it seems to me that on further deliberation you should be able to arrive at this point. You are directed to return and deliberate.
>
> I don't indicate by that that I want you to bring in a verdict of guilty or innocent, either one. Whatever you do is your own business in accordance

with your own conscience, but I think you should be able to arrive at a verdict.

The jury resumed deliberations and after an hour reported a verdict, finding all three defendants guilty.

The additional instruction is not the typical "Allen" charge,[8] which this court, despite repeated and strong attacks upon it, has consistently upheld to encourage verdicts in the face of an apparent deadlock, absent coercive circumstances and provided it was made clear that jurors were not to yield their conscientious convictions.[9]

■ Bowles' contention is that the supplemental instruction had a coercive impact, resulting in a forced verdict. Complaint is made that the judge did not specifically instruct that each individual juror was not to abandon his conscientious conviction in order to achieve unanimity; that by the court's emphasis upon the desirability of a verdict, whether it be guilty or not guilty, and by its omission to instruct that a disagreement was a third alternative, the jurors necessarily understood they had to come to a unanimous agreement, one way or the other. We cannot accept this argument. No specific words are required if jurors are properly instructed that each juror's vote must reflect his considered judgment as to how the case is to be decided. If the jurors follow such an instruction, as it must be presumed they will,[10] each vote

---

8. *See* Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

9. United States v. Hynes, 424 F.2d 754, (2d Cir. 1970); United States v. Barash, 412 F.2d 26, 31–32 (2d Cir.), cert. denied, 396 U.S. 832, 90 S.Ct. 86, 24 L.Ed.2d 82 (1969); United States v. Meyers, 410 F. 2d 693, 696–697 (2d Cir.), cert. denied, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 86 (1969); United States v. Rao, 394 F.2d 354 (2d Cir.), cert. denied, 393 U.S. 845, 89 S.Ct. 129, 21 L.Ed.2d 116 (1968); United States v. Bilotti, 380 F.2d 649, 654 (2d Cir.), cert. denied, 389 U.S. 944, 88 S.Ct. 308, 19 L.Ed.2d 300 (1967); United States v. Kenner, 354 F.2d 780, 782–784 (2d Cir. 1965), cert. denied, 383 U.S. 958,

86 S.Ct. 1223, 16 L.Ed.2d 301 (1966); United States v. Kahaner, 317 F.2d 459, 483–485 (2d Cir.), cert. denied, Corallo v. United States, 375 U.S. 835, 84 S.Ct. 62, 11 L.Ed.2d 65 (1963). But see United States v. Fioravanti, 412 F.2d 407 (3d Cir.), cert. denied sub. nom. Panaccione v. United States, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969); cf. United States v. Wynn, 415 F.2d 135 (10th Cir. 1969).

10. Shotwell Mfg. Co. v. United States, 371 U.S. 341, 367, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963); United States v. Restaino, 405 F.2d 628, 630 (3d Cir. 1968), cert. denied, 394 U.S. 904, 89 S.Ct. 1012, 22 L.Ed.2d 216 (1969); Stump v. Bennett, 398 F.2d

will be for either conviction or acquittal and one of three decisions will necessarily result: (1) not guilty; (2) guilty; or (3) disagreement. The right to disagree is implicit.

 The very purpose of a properly worded supplemental charge is to encourage jury agreement. This court has repeatedly emphasized that "[t]he considerable costs in money and time to both sides if a retrial is necessary certainly justify an instruction to the jury that if it is possible for them to reach a unanimous verdict without any juror yielding a conscientious conviction which he or she may have, they should do so." [11] So long as the supplemental charge does not operate coercively upon jurors, it would be self-defeating to require the court to emphasize that they could report a disagreement and thereby encourage disagreement rather than agreement. Realistically, jurors vote for a verdict of guilty or not guilty—and if they fail to agree, the result is no verdict, or disagreement. An explicit instruction to vote for a disagreement is not proper. [12]

 Here the court instructed the jurors to "make an individual judgment as to * * * guilt or innocence," and emphasized the duty to reach a verdict according to the dictates of conscience when, at the end of the instruction, he stated:

I don't indicate by that that I want you to bring in a verdict of guilty or innocent, either one. Whatever you do is your own business in accordance with your own conscience, but I think you should be able to arrive at a verdict."

This final word can hardly be called coercive. The judge did not require the jurors to yield their views; he did not order them to reach a verdict. He did no more than to state his own judgment that a verdict could, upon further deliberation, be reached. Perhaps it would have been better if more emphasis had been placed upon the judgment of each individual juror. But that the supplemental charge was not coercive in this context is best demonstrated by the circumstance that the three defense lawyers, of very considerable experience in criminal trial work, took no exception to the supplemental charge. [13]

111, 116 (8th Cir.) (en banc), cert. denied, 393 U.S. 1001, 89 S.Ct. 483, 21 L. Ed.2d 466 (1968).

11. United States v. Rao, 394 F.2d 354, 355 (2d Cir.), cert. denied, 393 U.S. 845, 89 S.Ct. 129, 21 L.Ed.2d 116 (1968); see United States v. Hynes, 424 F.2d 754 (2d Cir., April 10, 1970).

12. If the jury is ultimately unable to agree, they may report a disagreement; yet their primary responsibility remains, where possible, to reach a verdict. At early common law, the jury was expected to reach a unanimous verdict, no matter how long the process took: '[The jury] are to be kept without meat, drink, fire, or candle, unless by permission of the judge, till they are all unanimously agreed. A method of accelerating unanimity not wholly unknown in other constitutions of Europe, and in matters of greater concern [sic]. * * * And it has been held, that if the jurors do not agree in their verdict before the judges are about to leave the town, though they are not to be threatened or imprisoned, the judges are not bound to wait for them, but may carry them round the circuit from town to town in a cart. * * * When they are all unanimously agreed, the jury return back to the bar * * *. 3 W. Blackstone Commentaries *375–76 (Sharswood ed. 1873). See also II Hale's Pleas of the Crown 296 (Emlyn ed. 1800). Although the court may no longer starve the jurors into agreement nor use less subtle but equally coercive measures to force a verdict, see United States v. Fioravanti, 412 F.2d 407, 416 n. 20 (3d Cir.), cert. denied sub. nom. Panaccione v. United States, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969); People v. Sheldon, 156 N.Y. 268, 50 N.E. 840 (1898), neither should it encourage them to disagree. The ancient principle remains that "[t]he very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves." Allen v. United States, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

13. See United States v. Kahaner, 317 F.2d 459, 478–479, 482 (2d Cir.), cert. denied, 375 U.S. 836, 84 S.Ct. 74, 11 L.Ed.2d 65

## II.

Wilson, the driver of the convertible, and Thomas, who was also seated in the front, challenge the sufficiency of the evidence as against them. They do not question that the jury could readily have found that the mail was stolen and that it was in the physical possession of Ganuza in the rear of the car. But they contend that neither was identified as one of the two men observed by the letter carrier running away from the area of the broken-into mail box and that the evidence does not warrant an inference of constructive possession of the stolen mail from the mere fact that they were in the car or that they willfully aided and abetted such possession.

 It is true, the case against them is circumstantial. But circumstantial evidence is of no less probative value than testimonial evidence.[14] Given either type of evidence, a jury, if properly instructed as to reasonable doubt, is not foreclosed from drawing upon its common experience with persons and events. The question is always whether the jury may rationally and logically infer the ultimate fact to be proved from basic facts, whether established by circumstantial or testimonial evidence, and the surrounding circumstances of the case.[15]

Further, the rule is that "once the trier of the fact has found for the government, the evidence must be viewed most favorably to it, which includes, where there is, as here, circumstantial evidence, the indulgence in all permissible inferences in its favor."[16] So viewed, we are of the opinion that the permissible inferences drawn by the jury are rational, and there is no basis for disturbing the jury's verdict.

The four defendants were found seated in a convertible with New Jersey license plates located within a short distance of the broken-into relay box. This was within minutes, if not immediately, after the letter carrier gave chase to two men, one of whom wore a shirt that corresponded to the one that Bowles wore when arrested. Ganuza, with Bowles seated alongside of him in the rear, was found in actual possession of the stolen bag, and located next to them were tools adapted to breaking into mail receptacles. From these facts the jury was clearly warranted in inferring that Bowles and Ganuza were the thieves.[17] Further, the presence of a white convertible with New Jersey license plates, noticed by the letter carrier when he chased the two men, its location near the relay box almost simultaneously after it was broken into, the size of the mail bag, which contained

(1963). The failure to raise any objection to the supplemental charge below would itself be a sufficient ground for rejecting appellant's claim of error in this court. United States v. Indiviglio, 352 F.2d 276 (2d Cir. 1965), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966); Fed.R.Crim.P. 30; *see* United States v. Hynes, 424 F.2d 754, 757–758 (2d Cir. 1970).

14. Holland v. United States, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150 (1954); Lukon v. Pennsylvania R. Co., 131 F.2d 327, 329 (3d Cir. 1942).

15. *See* McCarty v. United States, 409 F.2d 793, 798 (10th Cir.), cert. denied, 396 U.S. 836, 90 S.Ct. 95, 24 L.Ed.2d 87 (1969); United States v. Aadal, 368 F.2d 962 (2d Cir. 1966), cert. denied, 386 U.S. 970, 87 S.Ct. 1161, 18 L.Ed.2d 130 (1967); United States v. Hines, 256 F.2d 561, 564 (2d Cir. 1958); *cf.* Thurmond v. United States, 377 F.2d 448 (5th Cir. 1967). *See*

*generally* Gallick v. Baltimore & O. R. R., 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); Killian v. United States, 368 U.S. 231, 257, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961); Schulz v. Pennsylvania R. R., 350 U.S. 523, 526, 76 S.Ct. 608, 100 L.Ed. 668 (1956).

16. United States v. Brown, 236 F.2d 403, 405 (2d Cir. 1956); see McCarty v. United States, 409 F.2d 793, 798 (10th Cir.), cert. denied, 396 U.S. 836, 90 S.Ct. 95, 24 L.Ed.2d 87 (1969).

17. *See* McNamara v. Henkel, 226 U.S. 520, 33 S.Ct. 146, 57 L.Ed. 330 (1913); United States v. De Sisto, 329 F.2d 929, 935 (2d Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964); Kowalewski v. United States, 418 F.2d 118 (9th Cir. 1969); *cf.* Rugendorf v. United States, 376 U.S. 528, 536–537, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); Wilson v. United States, 162 U.S. 613, 619–620, 16 S.Ct. 895, 40 L.Ed. 1090 (1896).

208 pieces of mail, and the exposed tools, including a crowbar, permitted a rational inference that the car was a "getaway" or "pickup" car for the thieves and that the two men in front were acting in concert with them in knowing possession of the fruits of the freshly committed crime.[18]

The judgments of conviction are affirmed.

---

18. See Simon v. United States, 78 F.2d 454 (6th Cir. 1935); cf. United States v. Garguilo, 310 F.2d 249, 253 (2d Cir. 1962). See also United States v. Eustace, 423 F.2d 569 (2d Cir. 1970); Toliver v. United States, 224 F.2d 742, 745 (9th Cir. 1955).