Eduardo LA TORRES, Petitioner,

v.

Hans WALKER, Superintendent of Auburn Correction Facility, Respondent.

No. 97CIV.3392(RMB)(JCF).

United States District Court, S.D. New York.

April 12, 2000.

Eduardo La Torres, Wallkill, NY, for Petitioner.

Thomas F. Hickey, Esq., Robert M. Morgenthau, Esq., New York City, for Defendants.

## ORDER

BERMAN, District Judge.

### I. Background

On or about May 8, 1997, Eduardo La Torres ("Petitioner" or "La Torres"), a *pro se* litigant, filed a petition for a writ of habeas corpus ("Petition") with this Court. La Torres had been convicted, in 1991, in New York State Supreme Court, New York County, of two counts of attempted murder in the first degree, one count of criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, and reckless endangerment in the first degree. In his Petition, La Torres argues that the trial court violated his Sixth Amendment right to confront an adverse witness by admitting grand jury testimony of Xavier Murillo ("Murillo"), an individual who did not appear at the Petitioner's trial and who, in fact, was murdered before the trial began. La Torres also argues that it was improper to consider the testimony of Orville Rainford ("Rainford"), a government cooperator, concerning evidence linking La Torres to the murder of Murillo.

On June 28, 1999, the Honorable James C. Francis IV, United States Magistrate Judge, Southern District of New York, to whom the matter had been referred, issued a Report and Recommendation ("Report") recommending that Mr. La Torres' Petition be denied on the merits. In his Report, Magistrate Judge Francis clearly advised the parties of the procedures for objecting to the Report: he stated: "Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections ('Objections') to this report and recommendation." (Report, at 21). Judge Francis further advised the parties of the consequences of not timely objecting to the Report, stating that "[f]ailure to file timely objections will preclude appellate review." (Report, at 21–22). *See Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992). The Petitioner timely filed Objections; the State (through the Office of Robert Morgenthau, District Attorney, New York County) has not.

**For the reasons set forth below, the Court denies Petitioner's writ of habeas corpus on the merits.**

### II. Standard of Review

The Court may adopt those portions of the Report to which no objections have been made and which are not facially erroneous. *See Letizia v. Walker,* 1998 WL 567840 at *1 (W.D.N.Y. Aug. 27, 1998), *Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991), *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985). The Court conducts a de novo review of those portions of the Report to which objections have been made. See *Letizia,* 1998 WL 567840 at *1, *Pizarro,* 776 F.Supp. at 817. "Because 28 U.S.C. § 636(b) requires a 'de novo determination' rather than a de novo hearing, the district court is free to place 'whatever reliance...in the exercise of sound judicial discretion, [it chooses] to place on a magistrate's proposed findings and recommendation.'" *Pizarro,* 776 F.Supp. at 817, quoting Grassia v. Scully, 892 F.2d 16, 19 (2d Cir.1989). Thus, a hearing is not required. *Id.*

### III. Analysis

Here, the uncontested portions of the Report are not facially erroneous and are adopted by this Court. Regarding the contested portions, the Court has undertaken a *de novo* review and adopts the Report in all material respects.

Relying, in part, on *United States v. Mastrangelo,* 693 F.2d 269 (2d Cir.1982),[1]

---

1. Where the Court of Appeals held that the right of confrontation can be waived by mis-

Petitioner objects to the Report on the following three grounds: (i) Murillo's testimony should not have been admitted because "there were several other witnesses to petitioner's alleged involvement in the offense for which petitioner was indicted; any or all of whom could have been and were called by the prosecution to testify at trial."; (ii) that "there was no corroborative evidence to support Rainford's admittedly hearsay testimony that petitioner was any way responsible for the death of Murillo"; and (iii) the introduction of both Rainford's testimony at trial and Murillo's grand jury testimony "was more prejudicial than probative."

■ Petitioner's objections are not persuasive. For one thing, the holding in *Mastrangelo* is that where a witness becomes unavailable due to a person's own misconduct the "law will not allow a person to take advantage of his or her own wrong." *Mastrangelo*, 693 F.2d at 273. The fact that Murillo's testimony was not the sole evidence against La Torres does not change the analysis or the underlying reasons for admitting such evidence. A defendant may not be allowed to take advantage of his or her own wrong. *Mastrangelo*, 693 F.2d at 273.

■ Second, Rainford's hearsay testimony at the evidentiary hearing did not require corroboration. *Mastrangelo*, 693 F.2d at 273 (at an evidentiary hearing regarding the admissibility of evidence "hearsay evidence ... will be admissible."). Nor was Rainford's trial testimony subject to a corroboration requirement because, as Judge Francis pointed out, "any out-of-court statements testified to by Mr. Rainford while on the witness stand at Mr. La Torres' trial qualified as admissions or exceptions to the hearsay rule and therefore were appropriately admitted by the trial judge." (Report at 20).[2]

■ Petitioner's argument that Rainford's trial testimony and Murillo's grand jury testimony should have been excluded because they were "more prejudicial than probative" was not, apparently, presented to the Magistrate.[3] Even if Petitioner's Objection in this connection were proper, the trial judge did not err in admitting the challenged evidence. In fact, the trial judge here specifically found the probative value of the evidence to outweigh any prejudice:

[I]t's clear consciousness of guilt evidence and highly probative of the identity of these defendants as the people who committed the crimes charged. I have

---

conduct of the defendant.

**2.** For example, Rainford's testimony that Petitioner threatened livery cab drivers by stating "You don't want to end up like '08' " (a reference to Murillo), does not constitute hearsay "because it was not offered for its truth" but rather as evidence of "defendant's consciousness of guilt." *People v. Scott*, 203 A.D.2d 911, 611 N.Y.S.2d 725, 726 (N.Y.A.D. 4th Dep't 1994). It may also have been admissible as an admission against penal interest. *See People v. Robinson*, 267 A.D.2d 336, 700 N.Y.S.2d 203, 204 (N.Y.A.D. 2d Dep't 1999).

**3.** *See Robinson v. Keane*, No. 92 Civ. 6090, 1999 WL 459811 at *4 (June 29, 1999 S.D.N.Y.). ("Theses issues were not raised before the Magistrate Judge and therefore were not addressed by him; accordingly, they may not properly be deemed 'objections' to any finding or recommendation made in the Report and Recommendation."); *Abu–Nassar v. Elders Futures*, No. 88 Civ. 7906, 1994 WL 445638 at *4 n. 2 (August 17, 1994 S.D.N.Y.) ("These arguments were not raised before [the Magistrate Judge], and are not submitted as objections but as new arguments. Accordingly, plaintiffs' arguments and evidence are untimely. If the Court were to consider formally these untimely contentions, it would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a report is issued to advance additional arguments.").

weighed the prejudicial effect of this evidence against its probative value, and I have found in favor of its probative value.

(Report, at 9 (quoting Hearing at 514).) This Court agrees with the trial judge's ruling. *See People v. Priester*, 255 A.D.2d 222, 681 N.Y.S.2d 243, 243 ("Testimony concerning defendant's talk of killing an eyewitness, the prosecutor and defendant's prior attorney during defendant's aborted first trial was properly admitted as evidence of defendant's consciousness of guilt. The probative value of this evidence outweighed its prejudicial effect.") (citations omitted).

## IV. Conclusion

Accordingly, the Court incorporates the Report by reference and, for the reasons set forth herein and therein, denies Mr. La Torres' Petition. The Clerk is respectfully directed to dismiss the action with prejudice.

## REPORT AND RECOMMENDATION

BERMAN, United States Magistrate Judge.

Eduardo La Torres petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for two counts of attempted murder in the first degree, one count of criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree and reckless endangerment in the first degree. Mr. La Torres was convicted on March 7, 1991, following a jury trial in New York State Supreme Court, New York County. He is presently serving consecutive terms of 20 years to life on the attempted murder counts and lesser con-

current prison terms for the remaining offenses.

The sole claim asserted by Mr. La Torres in this petition is that the trial court violated his Sixth Amendment right to confront an adverse witness by admitting the grand jury testimony of a witness who was murdered before the petitioner's trial.[1] For the reasons that follow, I recommend that the petition be denied.

### Background

The petitioner's trial commenced in January 1991 before the Honorable Leslie Crocker Snyder. Mr. La Torres was tried with a co-defendant, David Rosario. The charges against these defendants arose out of a shootout with New York City police officers in the early morning hours of March 12, 1989. Evidence presented at trial showed that on the morning in question, a gray Lincoln Town Car with three occupants was traveling westbound on 145th Street in Manhattan. (Tr. at 112, 153).[2] When the car arrived at the corner of 145th Street and Edgecomb Avenue, the occupant of the back seat fired a weapon from the window. (Tr. at 153, 221). The shot narrowly missed both a woman sitting in a car and a police officer. (Tr. at 155–60). Officers on the scene took cover and transmitted the location of the vehicle to other officers. (Tr. at 158–59, 223–24). In response, Officers Juan Nivar and Edward Rutter set up a roadblock on Harlem River Drive. (Tr. at 267, 555). Minutes later, the Lincoln approached the roadblock. The officers got out of their car, crouched behind their doors, drew their guns, and ordered the occupants to exit the car. (Tr. at 268, 555–59). Instead of obeying the orders, the driver reversed the car. Simultaneously, gun shots were again fired

1. Mr. La Torres raised seven claims in his original habeas corpus petition, but in his March 15, 1999 reply memorandum in support of a writ of habeas corpus, he withdrew all claims except Claim VI.

2. "Tr." refers to the transcript of the trial.

from the rear of the Lincoln. (Tr. at 287, 561). Gun fire was returned by Officer Nivar. (Tr. at 289, 563).

The driver lost control of the Lincoln and crashed into a guard rail. (Tr. at 291, 564). All three occupants quickly exited the car and ran. The driver ran in one direction and was soon caught by Officers Rutter and Nivar. (Tr. at 295, 308, 315, 566–74). The driver was later identified as Xavier Murillo.[3] (Tr. at 315, 574). The other two occupants ran into the woods nearby. (Tr. at 313, 572). Minutes later, two males emerged from the woods and were caught by other police officers. Officer Rutter eventually arrived at the location where the two men were being held and identified them as two occupants of the Lincoln. (Tr. at 576–79). They were Eduardo La Torres and David Rosario. (Tr. at 579).

On March 12, 1989, the Lincoln Town Car driver, Mr. Nurillo, testified before the grand jury which eventually indicted Mr. Rosario and Mr. La Torres. On June 17, 1989, Mr. Murillo was found dead with five bullet holes in the back of his head. Before trial, the prosecution moved for admission of Mr. Murillo's grand jury testimony, claiming that the defendants were responsible for his death. On January 7, 1991, Justice Snyder held a *Mastrangelo* hearing to determine the admissibility of the deceased witness's grand jury testimony.[4]

At the hearing, it was stipulated that Mr. Murillo was shot dead in the Bronx on June 17, 1989. (Hearing at 315). Also at the hearing, the prosecution produced as their sole witness a former associate of the defendants, Orville Rainford. At the time, Mr. Rainford was incarcerated at the Westchester County Jail for possession of

heroin and a loaded gun. (Hearing at 175–78). He was facing a maximum of 25 years imprisonment, but had not yet been sentenced. (Hearing at 195, 287). Mr. Rainford testified that he initially came forward to offer information about Mr. Rosario because he "needed help on [his] sentence." (Hearing at 186). He also testified that in exchange for his truthful testimony, the district attorney agreed to inform Mr. Rainford's sentencing judge of the extent to which he cooperated with the prosecution. (Hearing at 192). The district attorney also promised him immunity for "whatever actions [he] had in the crimes committed." (Hearing at 192). And finally, Mr. Rainford was promised safety for himself and his family. (Hearing at 193).

In addition to testifying about his general relationship with both defendants, Mr. Rainford testified that he had been involved in a drug business with both men. (Hearing at 196–226). He further testified to events leading up to the March 12, 1989 incident. Sometime in late 1988 or early 1989, he was driving with Mr. Rosario and another man on 145th Street in Manhattan. Someone shot at Mr. Rosario and hit him in the buttocks. (Hearing at 226–31). Mr. Rainford testified that this incident angered Mr. Rosario, who kept repeating that "this is the Emperor, nobody shoots the Emperor." (Hearing at 231). Sometime later, Mr. Rosario learned from a friend, Duran, the identity of the shooters and their whereabouts. Armed with guns and bulletproof vests, Mr. Rosario and Duran went to a roller rink, and shot and killed two men. (Hearing at 232–36). Mr. Rosario then asked Mr. Rainford to drive by the roller rink to see if they were dead,

---

**3.** This individual's name is spelled three different ways in the record. For purposes of consistency, the spelling "Murillo" will be used throughout this opinion.

**4.** *United States v. Mastrangelo,* 693 F.2d 269 (2d Cir.1982).

which he did, (Hearing at 236). The police had arrived and the two bodies were covered. (Hearing at 237).

After the roller rink incident, Mr. Rosario continued to try to find out who else was involved in shooting him. On the evening of March 11, 1989, Mr. Rosario told Mr. Rainford that the rest of the men responsible for shooting him were going to be on 145th Street and Eighth Avenue that night. (Hearing at 245–46). Mr. Rainford declined to go but later he saw Mr. Rosario and Mr. La Torres in a gray Lincoln, marked with the number 08. (Hearing at 246–47). On March 12, 1989, Mr. Rainford received a call from Mr. Rosario's wife asking where Mr. Rosario was. Mr. Rainford soon found out that Mr. Rosario and Mr. La Torres had both been arrested.

Several days later Mr. Rainford attended the arraignment of the defendants and helped bail Mr. Rosario out. (Hearing at 250–54). On the way home, Mr. Rosario told Mr. Rainford that his gun had gone off when he got out of the car and that he "got into it with the police." (Hearing at 255). He also told Mr. Rainford that the driver of the Lincoln had been arrested but had not been in court. He thought the driver must be cooperating with the district attorney's office. (Hearing at 256). At Mr. Rosario's request, Mr. Rainford called the car service company and confirmed that the driver, Mr. Murillo, was still employed. (Hearing at 256–57).

Sometime later, Mr. Rainford was in Mr. Rosario's apartment with Mr. La Torres and Mr. Rosario. Mr. La Torres was "hyper" and told Mr. Rosario that the driver was the only witness against them. (Hearing at 258). Mr. Rosario was trying to calm Mr. La Torres down. When the three left the apartment, Mr. Rosario told Mr. Rainford to go and get two men, "Londi" and "Jesus." When Mr. Rainford returned with them, Mr. Rosario told them to call the cab company, put the car on

hold, take the driver to a desolate area, and shoot him. (Hearing at 258–59). Mr. Rainford testified that later that day or the next, he saw Londi and Jesus again. They told him they had "screwed up" and that the driver had become suspicious and driven off. (Hearing at 260). When they told Mr. Rosario, he was very upset and said, "Damn, you all screwed it up. You all screwed it up." (Hearing at 261).

A couple of weeks later, Mr. Rainford got into a "shootout" and was arrested for possession of drugs and guns. (Hearing at 261). He remained in jail for over a month. When he got out on bail, he heard rumors from various cab drivers that "08" had been killed. Thereafter, when Mr. Rosario and Mr. Rainford went riding together in a car service, Mr. Rosario would threaten the drivers by saying, "You don't want to end up like 08." (Hearing at 263).

Mr. Rainford also testified that sometime later he was in Mr. Rosario's house when Mr. La Torres called from jail. When Mr. Rosario got off the phone, he reported that Mr. La Torres told him that a man named Lenny was cooperating with the district attorney about the death of the cab driver and had brought the police to where the guns used in the shooting were located. (Hearing at 264).

On another occasion, Mr. Rainford went with Mr. Rosario to visit Mr. La Torres in jail. Mr. Rosario told Mr. Rainford that Mr. La Torres had given him papers which proved that someone named Lenny was cooperating with the district attorney about the driver's death. Mr. Rainford later heard Mr. Rosario tell Lenny's girlfriend that he wanted to speak with Lenny. (Hearing at 265–66).

At the conclusion of the *Mastrangelo* hearing, the trial court held that the prosecution had met its burden of proof:

"Based upon my findings of fact which found the witness credible in all regards

relevant to this hearing, despite his unsavory and criminal history, and maybe in part because of it, and utilizing the standard of proof of clear and convincing evidence, I find that the People have clearly met that burden to prove that both of these defendants by their own misconduct—that is, specifically hiring two people to kill the witness, who failed and the witness being shot dead thereafter, that they are responsible for the witness' unavailability and, in fact, his death, and therefore that witness' Grand Jury testimony will be admitted at this trial."

(Hearing at 425).[5]

The court also held that Orville Rainford could testify at trial to much of what he testified to at the *Mastrangelo* hearing, including the plot to kill Mr. Murillo and the fact that Mr. Murillo had been murdered. (Hearing at 513). In doing so, the court acknowledged the highly prejudicial effect of such evidence, but found that the probative value was greater. The court agreed with the prosecution that the plot to kill Murillo was probative of consciousness of guilt and corroborated identification of the occupants in the Lincoln. "[I]t's clear consciousness of guilt evidence and highly probative of the identity of these defendants as the people who committed the crimes charged. I have weighed the prejudicial effect of this evidence against its probative value, and I have found in favor of its probative value." (Hearing at 514).

Following the pretrial hearing, a jury trial began before Justice Snyder on January 22, 1991. On February 7, 1991, the jury delivered a partial verdict against the defendants, finding both men guilty of reckless endangerment in the first degree and criminal possession of a weapon in the

second and third degrees. On February 8, 1991, the jury returned guilty verdicts against both defendants on both counts of attempted murder. The petitioner and Mr. Rosario were sentenced on March 7, 1991.

In January 1992, Mr. La Torres filed a direct appeal of the judgment of conviction to the Appellate Division, First Department. On October 27, 1992, the Appellate Division unanimously affirmed the conviction. *People v. LaTorres*, 186 A.D.2d 479, 590 N.Y.S.2d 187 (1st Dep't 1992). It specifically agreed with the trial court's determination at the *Mastrangelo* hearing.

[W]e agree with the trial court's determination that the People proved defendants or one acting in their behalf caused the death of an eyewitness to the shooting spree herein prior to trial, thereby forfeiting their right to confrontation and allowing admission of the prior Grand Jury testimony of the deceased witness on the People's direct case.

*LaTorres*, 186 A.D.2d at 480, 590 N.Y.S.2d at 188.

The petitioner then sought leave to appeal to the New York Court of Appeals. This application was denied on February 2, 1993. *People v. LaTorres*, 81 N.Y.2d 842, 595 N.Y.S.2d 741, 611 N.E.2d 780 (1993). The petitioner sought reconsideration in March 1993, and this motion was denied on May 14, 1993. The petitioner then moved to reargue his direct appeal before the Appellate Division. On February 16, 1995, the Appellate Division denied the motion.

The *Pro Se* Office of this Court received the instant habeas corpus petition from the petitioner on April 28, 1997.

---

**5.** Xavier Murillo's grand jury testimony appears on pages 690–707 of the trial transcripts.

## Discussion

### A. Limitations Period

Before addressing the merits, the Court must consider whether Mr. La Torres timely filed his habeas corpus petition as required by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996). The AEDPA established a one-year filing deadline for federal habeas corpus petitions. Generally, this limitations period begins to run when a petitioner's conviction becomes final at the state level, either through (1) conclusion of direct review, or (2) expiration of the time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A).

Where a judgment of conviction became final prior to the enactment of the AEDPA, the movant is entitled to file his § 2254 motion at any time within a year of the statute's effective date. *Ross v. Artuz,* 150 F.3d 97 (2d Cir.1998). Mr. La Torres' final state ruling occurred on May 14, 1993, when the New York Court of Appeals denied his request for reconsideration of the denial of leave to appeal. Since this occurred prior to the enactment of AEDPA, Mr. La Torres' deadline for filing was April 24, 1997.

The *Pro Se* Office received Mr. La Torres' application for a writ of habeas corpus on April 28, 1997, four days after the deadline. Nevertheless, Mr. La Torres is not precluded from pursuing his claim in federal court because, pursuant to *Houston v. Lack,* 487 U.S. 266, 268–76, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), a *pro se* prisoner's petition is deemed filed at the moment of delivery to prison authorities for forwarding to the district court, not the date on which the court receives the petition. Mr. La Torres' habeas corpus petition was dated April 11, 1997. In addition, He stated in an affirmation to the Court that his petition was given to prison officials at the Auburn Correctional Facility on April 15, 1997, and this is corroborated by a Department of Correctional Services form submitted by the petitioner. Accordingly, Mr. La Torres filed his petition less than one year after AEDPA was enacted, and his application for habeas corpus relief is not barred by the statute of limitations.

### B. The Sixth Amendment Claim

In his petition, Mr. La Torres' sole claim is that his Sixth Amendment rights were violated when the trial judge allowed into evidence at trial the grand jury testimony of Xavier Murillo, after determining that Mr. La Torres was responsible for Mr. Murillo's death.

The Sixth Amendment's Confrontation Clause provides that "in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The admission of hearsay testimony is generally a violation of the Sixth Amendment because "the Confrontation Clause reflects a preference for face-to-face confrontation at trial, and ... 'a primary interest secured by [the provision] is the right of cross-examination.'" *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (footnote omitted) (quoting *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965)). The Confrontation Clause is therefore violated when "hearsay evidence [is] admitted as substantive evidence against the defendan[t] with no opportunity to cross-examine the hearsay declarant at trial, or when an out-of-court statement of an unavailable witness does not bear adequate indications of trustworthiness." *Kentucky v. Stincer,* 482 U.S. 730, 737, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) (citations omitted). The Supreme Court has long recognized that the right of confrontation may be waived. A defendant may waive the Sixth Amendment right by consent or, on occasion, without

consent, in the case of defendant's own misconduct. *Illinois v. Allen,* 397 U.S. 337, 342, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Snyder v. Massachusetts,* 291 U.S. 97, 106, 54 S.Ct. 330, 78 L.Ed. 674 (1934); *Diaz v. United States,* 223 U.S. 442, 452–53, 32 S.Ct. 250, 56 L.Ed. 500 (1912); *Reynolds v. United States,* 98 U.S. 145, 159, 8 Otto 145, 25 L.Ed. 244 (1878). Similarly, the Second Circuit has recognized that the right of confrontation may be waived by consent or misconduct. *United States v. Thai,* 29 F.3d 785, 814 (2d Cir. 1994); *United States v. Aguiar,* 975 F.2d 45, 47 (2d Cir.1992).

> If a witness' silence is procured by the defendant himself, whether by chicanery, by threats, or by actual violence or murder, the defendant cannot then assert his confrontation clause rights in order to prevent prior grand jury testimony of that witness from being admitted against him. Any other result would mock the very system of justice the confrontation clause was designed to protect.

*Mastrangelo,* 693 F.2d at 272–73 (internal citations omitted).

■ Because the right to confrontation is critical, the Second Circuit requires that an evidentiary hearing be held to determine if the defendant was in fact responsible for the unavailability of the witness and consequently waived his Sixth Amendment right. *Thai,* 29 F.3d at 814; *Aguiar,* 975 F.2d at 47; *Mastrangelo,* 693 F.2d at 273.

In this case, a *Mastrangelo* hearing was held, and the trial court found by clear and convincing evidence that Mr. La Torres was connected with Mr. Murillo's death.

> I find the People have met their burden of proof by clear and convincing evidence as to both of these defendants. That due to the misconduct … in terms of arranging a plot to kill the witness [Murillo], who was ultimately killed, the Grand Jury testimony of that witness

will be admitted into evidence on the People's direct case.

(Hearing at 411).

The Second Circuit requires that a court find by "a preponderance of evidence" that a defendant was responsible for a witness's unavailability before Sixth Amendment rights can be waived. *Mastrangelo,* 693 F.2d at 272–73. New York courts, on the other hand, require that the higher standard of "clear and convincing" evidence be applied to determine if a defendant has waived his confrontation rights. *People v. Geraci,* 85 N.Y.2d 359, 362, 625 N.Y.S.2d 469, 470, 649 N.E.2d 817 (1995); *Holtzman v. Hellenbrand,* 92 A.D.2d 405, 414, 460 N.Y.S.2d 591, 597 (2d Dep't 1983). Since the court in Mr. La Torres' case used the "clear and convincing" evidence standard, a finding of admissibility of Mr. Murillo's testimony, if correct, would also satisfy the constitutional standard.

The petitioner argues that regardless of the standard of evidence used, the trial court erred in admitting Mr. Murillo's testimony because New York Criminal Procedure Law ("CPL") § 670.10 prohibits its admission. CPL § 670.10 governs when testimony which has been given in a previous proceeding may be used in a criminal proceeding. Mr. La Torres points out that three narrow exceptions are allowed under CPL § 670.10, none of which include grand jury testimony.

■ The petitioner acknowledges that no such prohibition exists in federal law but nonetheless alleges that this purported violation of New York state law deprives him of his federal constitutional rights. This is incorrect. A violation of state law, by itself, does not rise to the level of a federal claim. The Supreme Court has stated that "federal habeas corpus relief does not lie for errors of state law[,]" *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), and

that a violation of state law by itself does not rise to a violation of the United States Constitution. *Snowden v. Hughes,* 321 U.S. 1, 11, 64 S.Ct. 397, 88 L.Ed. 497 (1944); *see also Chambers v. Bowersox,* 157 F.3d 560, 564 (8th Cir.1998) (habeas corpus claim dismissed since mere violation of state law not automatic equivalent of violation of U.S. Constitution); *Kraushaar v. Flanigan,* 45 F.3d 1040, 1047 (7th Cir.1995) (failure to follow procedures required by state law, but not by U.S. Constitution, establishes only violation of state law).[6]

In the alternative, the petitioner argues that the state failed to show by clear and convincing evidence that the petitioner was responsible for the death of Mr. Murillo. Specifically, the petitioner argues that Orville Rainford, the only witness relied on by the State at the *Mastrangelo* hearing, was not credible and that the prosecution failed to produce corroborating evidence.

■ It is well settled that on habeas corpus review deference is to be given to factual findings made by state courts. *Brown v. Kelly,* 973 F.2d 116, 120 (2d Cir.1992); *Bell v. Coughlin,* 778 F.Supp. 164, 170 (S.D.N.Y.1991).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). This is particularly the case when a witness's credibility is in question. "[The federal habeas corpus statute] gives federal habeas courts no li-

cense to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *R.C. Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

■ In this case, as the petitioner points out, Mr. Rainford was a convicted criminal who was in prison awaiting sentencing at the time that he testified at the *Mastrangelo* hearing. Mr. Rainford admitted at the hearing that he hoped to get his sentence reduced by cooperating with the district attorney. (Hearing at 186). He received several promises in exchange for his willingness to testify truthfully: (1) the district attorney would attend his sentencing trial and tell the judge that he cooperated in Mr. La Torres' trial; (2) he and his family would be kept safe; and (3) he would receive immunity for crimes he testified to truthfully at the hearing. (Hearing at 192–93).

In spite of these factors, the trial court found Mr. Rainford credible.

> [K]eeping in mind the numerous criminal acts of this ... witness, I nevertheless credit his testimony fully, found him to be forthright and credible, not always about revealing every criminal act that he had committed—although he admitted many of those—but I found that his demeanor, his basis of knowledge, and general appearance, and his answer to the questions, was forthright and completely credible, and I credit his testimony fully.

(Hearing at 390).

All the information that is presently in the record before this Court was also before the trial judge. The trial judge was certainly in a position to judge Mr. Rain-

---

6.  It is now clear, in any event, that the admission of grand jury testimony is not a violation of New York law either. In *Geraci,* 85 N.Y.2d at 365–66, 625 N.Y.S.2d at 472–73, 649 N.E.2d 817, the Court of Appeals acknowledged the general rule that grand jury testimony of an unavailable witness is inadmissible, but created an exception for cases where it has been shown that the defendant was responsible for the witness's unavailability.

ford's credibility since she observed the witness's demeanor at the *Mastrangelo* hearing and at the trial. Given the deference accorded state court findings as well as the fact that the court heard and observed the witness in person, the petitioner has failed to establish that the trial court erred in finding Mr. Rainford credible.

The petitioner further argues that regardless of the credibility determination, the prosecution was required to present more than Mr. Rainford's testimony at the *Mastrangelo* hearing, particularly since "Rainford's entire testimony was based on hearsay." According to the petitioner, "[h]earsay alone would not constitute sufficient evidence to deprive a criminal defendant of his constitutional right to confront his accusers." (Petitioner's Reply Memorandum (Pet. Reply Mem.) at 12). He further argues that this reliance by the trial court on hearsay resulted in "an unreasonable application of federal law, and likewise resulted in a decision that was based on an unreasonable determination of the facts," pursuant to 28 U.S.C. § 2254(d)(1) and (2). (Pet. Reply Mem. at 11).

Contrary to the petitioner's position, trial courts are not prohibited from basing a decision solely on hearsay when determining whether a witness's unavailability has been procured by the defendant. *Mastrangelo*, 693 F.2d at 272–73; *Geraci v. Senkowski*, 23 F.Supp.2d 246, 257 (E.D.N.Y.1998) (Constitution does not prohibit a trial court's reliance on hearsay evidence in making initial determination regarding admissibility of evidence).

The petitioner further alleges that the state court erred as a matter of constitutional law when it allowed Mr. Rainford to testify at the trial itself. (Pet. Reply Mem. at 12–13). He argues that "the same evidentiary standard that is used for admitting the hearsay testimony of an un-

available witness" should apply to Mr. Rainford. (Pet. Reply Mem. at 13, n. 5).

But the same evidentiary standard does not apply. Mr. Murillo was an unavailable witness while Mr. Rainford was present at trial. Since Mr. Rainford testified in person, Mr. La Torres' counsel was provided with an opportunity to confront and cross-examine Mr. Rainford and, indeed, did so. Mr. La Torres' Sixth Amendment rights thus were not violated. Additionally, any out-of-court statements testified to by Mr. Rainford while on the witness stand at Mr. La Torres' trial qualified as admissions or exceptions to the hearsay rule and therefore were appropriately admitted by the trial judge.

Finally, the petitioner argues that since the prosecution presented only circumstantial evidence at the *Mastrangelo* hearing, a stricter standard of proof was required. He argues that, "the testimony [Rainford] provided concerning defendant on this point amounted to no evidence at all. It was entirely circumstantial in nature, and, accordingly, its quantum and quality should be measured by the strict standard ordinarily utilized as an analytical tool for the assessment of wholly circumstantial evidence." (Brief in Support of Habeas Corpus Petition at 68).

Contrary to the petitioner's argument, federal courts have long recognized that circumstantial evidence is not inherently weaker than direct evidence. "This Circuit ... has unequivocally rejected the view that circumstantial evidence is probatively inferior to direct evidence and that its sufficiency is, therefore, to be determined by a different, more stringent test, than is applied to direct proof." *United States v. Brown*, 236 F.2d 403, 405 (2d Cir.1956); *see also United States v. Sureff*, 15 F.3d 225, 228–29 (2d Cir.1994); *United States v. Bowles*, 428 F.2d 592, 592 (2d Cir.1970).

In sum, the petitioner has failed to show that the trial court erred when it found that the evidence presented at the *Mastrangelo* hearing was sufficient. The consequent admission into evidence at trial of Xavier Murillo's grand jury testimony did not violate the petitioner's Confrontation Clause rights. The trial court properly found that the petitioner had waived any such objection due to his own involvement in Mr. Murillo's death. Therefore, Mr. La Torres' habeas corpus petition should be denied.

*Conclusion*

For the reasons set forth above, I recommend that Mr. La Torres's application for a writ of habeas corpus be denied and his petition be dismissed. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Richard M. Berman, Room 426, 40 Foley Square, New York, New York 10007, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely file objections will preclude appellate review.

June 28, 1999.